SLIP OP. 06-98

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr>
<td>

UNITED STATES,

                              Plaintiff,

v.

UPS CUSTOMHOUSE BROKERAGE, INC.,
dba UPS SUPPLY CHAIN SOLUTIONS, INC.,

                              Defendant.

</td>
<td>

**BEFORE: CARMAN, JUDGE**

Court No. 04-00650

</td>
</tr>
</table>

[Plaintiff's motion to strike is denied.  Defendant's partial motion for summary judgment is denied.]


Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Melinda D. Hart, Nancy Kim), Edward Greenwald, Department of Homeland Security, Bureau of Customs and Border Protection, Of Counsel, for Plaintiff.

Akin, Gump, Strauss, Hauer & Feld, LLP (Lars-Erik Hjelm, Lisa W. Ross, Thomas J. McCarthy), Washington, D.C., for Defendant.

Tompkins & Davidson, LLP (Laura Siegel Rabinowitz), New York, New York, for Amicus (National Customs Brokers & Freight Forwarders Association of America, Inc.).


June 28, 2006


### OPINION & ORDER

**CARMAN, JUDGE:** This matter comes before the Court on Defendant's Rule 56 Motion

for Summary Judgment ("Summary Judgment Motion") and Plaintiff's Motion to Strike

Defendant's $10,000 Penalty Refund Claim ("Motion to Strike").  Defendant, UPS Customhouse

Brokerage, Inc. ("UPS" or "Defendant") and Plaintiff, the United States ("Plaintiff" or

"Customs") each filed timely responses and replies to the respective briefs.  The Court, having

considered the parties' submissions and for the reasons that follow, denies both motions.


**PROCEDURAL HISTORY**

Defendant is a licensed customs broker responsible for preparing and filing customs entry

documents on behalf of its clients.  On May 15, 2000,[1] the United States Customs Service (now

the Bureau of Customs and Border Protection) ("Customs") concurrently issued three pre-penalty

notices to UPS for violations of section 641 of the Tariff Act of 1930, 19 U.S.C. § 1641 (2000)[2]

("the broker statute").[3]  The broker statute requires that Customs notify a broker prior to

enforcing a penalty against it for a violation of the statute.  19 U.S.C. § 1641(d)(2)(A) (2000)

("§ 1641(d)(2)(A)").[4]  On September 15, 2000, Customs issued three penalty notices covering the

---

[1]The parties appear to be in complete confusion about the year in which Customs issued the first pre-penalty notice.  The parties variously listed the year as 2000 (Def.'s Statement of Material Facts Not in Dispute ("Def.'s Stmt. of Facts") ¶ 5; Pl.'s Statement of Genuine Issues ("Pl.'s Stmt. of Facts") ¶ 10), 2004 (Def.'s Stmt. of Facts ¶ 6), and 2005 (Pl.'s Stmt. of Facts ¶¶ 5-6).  Based upon the record before it, the Court presumes that Customs concurrently issued three separate pre-penalty notices on May 15, 2000.

[2]Section 641(b)(4) of the Tariff Act of 1930, 19 U.S.C. § 1641(b)(4), requires a customs broker to "exercise responsible supervision and control over the customs business that it conducts."  Section 641(d)(1)(C) permits Customs to impose a monetary penalty when a broker "has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision."  19 U.S.C. § 1641(d)(1)(C).

[3]The May 15, 2000, pre-penalty notices initiated case numbers 2000-4196-300217, 2000-4196-300218, and 2000-4196-300219.  (Def.'s Stmt. of Facts ¶¶ 5-6.)

[4]The statute states that "the appropriate customs officer shall serve notice in writing upon any customs broker to show cause why the broker should not be subject to a monetary

three pre-penalty notices issued on May 15, 2000.  (Def.'s Statement of Material Facts Not in

Dispute ("Def.'s Stmt. of Facts") ¶ 8; Pl.'s Statement of Genuine Issues ("Pl.'s Stmt. of Facts")

¶ 8.)  On October 1, 2001, Defendant remitted to Customs $5,000 in satisfaction of each of the

three May 15, 2000, pre-penalty notices, for a total remission of $15,000.  (Def.'s Stmt. of Facts

¶ 9.)

On July 11, 2000, Customs issued another three pre-penalty notices,[5] and on August 8,

2000, Customs issued two more pre-penalty notices.[6]  On September 26, 2000, Customs issued

three penalty notices to UPS for violations of the broker statute noticed in the July 11, 2000, pre-

penalty notices.  (Def.'s Stmt. of Facts ¶ 2; Pl.'s 1st Am. Compl. ¶¶ 8-10.)  On October 19, 2000,

Customs issued an additional two penalty notices to UPS for violations of the broker statute

noticed in the August 8, 2000, pre-penalty notices.  (Def.'s Stmt of Facts ¶ 2; Pl.'s 1st Am.

Comp. ¶¶ 11-12.)  The May 15, July 11, and August 8, 2000, pre-penalty notices each alleged

violations of the responsible supervision and control provision of the broker statute regarding the

erroneous classification of merchandise entered between January 10 and May 10, 2000.  (Def.'s

Stmt. of Facts ¶ 1, ¶ 4; Pl.'s 1st Am. Compl. ¶¶ 8-12.)

UPS failed to remit the $75,000 in penalties imposed by the September 26, and October

19, 2000, penalty notices.  On December 17, 2004, Plaintiff filed a complaint against UPS

---

penalty . . . ."  19 U.S.C. § 1641(d)(2)(A) (emphasis added).

[5]The July 11, 2000, pre-penalty notices initiated case numbers 2000-4196-300221, 2000-4196-300222, and 2000-4196-300223.  (Pl.'s Summ. J. Resp. at 5.)

[6]The August 8, 2000, pre-penalty notices initiated case numbers 2000-4196-300319 and 2000-4196-300320.  (Pl.'s Summ. J. Resp. at 5.)

seeking to enforce the monetary penalties Customs imposed on Defendant. On February 14, 2006, with leave of Court, Plaintiff filed its First Amended Complaint seeking to recover $75,000, in total, for the five unpaid penalties assessed against Defendant.[7]

On April 21, 2005, Defendant filed its answer to Plaintiff's complaint. The answer included nine affirmative defenses and no counterclaims. On August 2, 2005, Defendant filed its Summary Judgment Motion.[8] Defendant's Summary Judgment Motion requests that this Court hold "that 19 U.S.C. § 1641 (d)(2)(A)[9] bars Plaintiff . . . from collecting more than a single monetary penalty, not to exceed $30,000, for all violations of 19 U.S.C. § 1641 . . . preceding the issuance of a Pre-penalty notice." (Def.'s Summ. J. Mot. at 1 (footnote added).) Defendant's Summary Judgment Motion also included a prayer for the refund of $10,000 Defendant previously paid to Customs in the form of a penalty. (Id. at 3; see also Mem. of Law in Supp. of Def.'s Mot. for Summ. Judg. ("Def.'s Summ. J. Br.") at 30.)

Also on August 2, 2005, the National Customs Brokers & Freight Forwarders Association of America, Inc. ("NCBFFAA") filed a partial consent motion to appear as amicus curiae in this

---

[7]Plaintiff's original complaint claimed $80,000 in unpaid penalties against Defendant. The amended complaint deleted a duplicate count. For purposes of resolving the motions before this Court, the $75,000 sum is accepted as accurate.

[8]The Court notes that Defendant captioned its motion rather misleadingly as a motion for summary judgment. Despite the title given by Defendant, its motion does not seek to dispose of all of the issues in this case and, therefore, is treated by this Court as a partial motion for summary judgment. See USCIT R. 56(d); Ugg Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F. Supp. 848 (1993) ("the Court may grant partial summary judgment").

[9]19 U.S.C. § 1641(d)(2)(A) states in relevant part that "the appropriate customs officer shall serve notice in writing upon any customs broker to show cause why the broker should not be subject to a monetary penalty not to exceed $30,000 in total for a violation or violations of this section."

matter.  On August 22, 2005, Customs filed its opposition to the NCBFFAA's motion to appear

in this case.  On January 13, 2006, this Court granted–over Plaintiff's objections–the

NCBFFAA's motion to appear as amicus curiae.

On October 14, 2005, Plaintiff concurrently filed its Motion to Strike Defendant's

inclusion of the $10,000 penalty refund demand, which appears for the first time in Defendant's

partial Summary Judgment Motion, and Plaintiff's Brief in Opposition to Defendant's Motion for

Summary Judgment ("Plaintiff's Summary Judgment Response").[10]

The parties are in substantial agreement on the facts as presented and as relevant to the

issues presently before this Court.  Before this Court are Plaintiff's Motion to Strike and

Defendant's Summary Judgment Motion.

### PARTIES' CONTENTIONS

**I.      MOTION TO STRIKE**

**A.      Plaintiff's Contentions**

The essence of Plaintiff's argument is that UPS failed to raise the issue of the requested

$10,000 penalty refund in its answer as a counterclaim and failed to seek leave of this Court to

amend its answer to properly plead a counterclaim.  (Pl.'s Mot. at 1.)  Plaintiff states that Court

---

[10]On August 31, 2005, Plaintiff requested an extension of time to October 14, 2005, to file its response to Defendant's partial Summary Judgment Motion.  This Court granted Plaintiff's request for an extension of time on September 7, 2005.  Accordingly, Plaintiff's response to Defendant's partial Summary Judgment Motion was timely filed.

of International Trade Rule 13(a)[11] requires that all claims against an opposing party be set forth

in a pleading.  If not set forth in a pleading, Plaintiff asserts that the pleader must seek leave of

court to amend its pleading and add the counterclaim.  (Pl.'s Mot. at 2 (quoting USCIT R.

13(e)[12]).)  Plaintiff posits that Defendant's penalty refund claim is not only "impermissible and

improperly asserted, but . . . also inexcusably late."  (Pl.'s Mot. at 2.)  As a result, Plaintiff urges

this Court to strike Defendant's penalty refund claim.

In the alternative, Plaintiff argues that Defendant's penalty refund claim is outside the

scope of this Court's counterclaim jurisdiction.  (Id. at 3.)  Plaintiff cites 28 U.S.C. § 1583(a) as

controlling this issue.  The statute states that

> In any civil action in the Court of International Trade, the court shall have
> exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or
> third-party action of any party, if (1) such claim or action involves the imported
> merchandise that is the subject matter of such civil action, or (2) such claim is to
> recover upon a bond or customs duties relating to such merchandise.

19 U.S.C. § 1583 (2000).  "[E]ven assuming, for argument's sake, that UPS's penalty refund

claim had been the subject of a counterclaim, it would involve imported merchandise unrelated

---

[11]Court of International Trade Rule 13(a) states

A pleading shall state as a counterclaim any claim which at the time of serving the
pleading the pleader has against any opposing party, if (1) the claim involves the
imported merchandise that is the subject matter of the civil action, or (2) the claim
is to recover upon a bond or customs duties relating to such merchandise.

[12]Court of International Trade Rule 13(e) states

When a pleader fails to set up a counterclaim through oversight, inadvertence or
excusable neglect, or when justice requires, the pleader may by leave of court set
up the counterclaim by amendment.

to the 45 merchandise entries that are the subject of this civil action." (Pl.'s Br. at 3.) Plaintiff

contends that the monies for which UPS claims a refund involve entries that are not subject to

this litigation and, therefore, are not within the jurisdiction of this Court. (Id.) As such, Plaintiff

concludes that Defendant's penalty refund claim must be rejected.


### B.      Defendant's Contentions

Defendant first argues that Plaintiff's Motion is untimely under Court of International

Trade Rule 12(f)[13] "because Plaintiff did not file the Motion within 20 days of Defendant's

service of its August 2, 2005 pleading, i.e., Defendant's Rule 56 Motion for Summary

Judgment." (Def.'s Resp. in Opp'n to Pl.'s Mot. to Strike Def.'s $10,000 Penalty Refund Claim

& Def.'s Alternative Mot. to Treat the Affirmative Defense & Prayer for Relief as a Countercl. or

to Set Up the Countercl. by Amendment ("Def.'s Resp.") at 1.) Defendant submits that

Plaintiff's failure to obtain an extension of time to file its motion renders the motion out of time.

---

[13]Court of International Trade Rule 12(f) states

Upon motion made by a party before responding to a pleading or, if no responsive
pleading is permitted by these rules, upon motion made by a party within 20 days
after the service of the pleading upon the party or upon the court's own initiative
at any time, the court may order stricken from any pleading any insufficient
defense or any redundant, immaterial, impertinent, or scandalous matter.

Defendant also complains that–in violation of Court of International Trade Rule 7(b)[14]–Plaintiff failed to consult with Defendant prior to filing Plaintiff's Motion.  (Id. at 2.)

Defendant next suggests that its fifth affirmative defense in its answer "squarely interposed the affirmative defense that Customs exceeded its statutory authority and sought the Court's order for further relief as is just and proper."  (Id.)  Defendant purports that its "affirmative defense and prayer for relief amount to a counterclaim that Customs make [UPS] whole for Customs' conduct that exceeds its statutory mandate."  (Id. at 3.)

Next, Defendant insists that "this Court has plenary authority under [Court of International Trade] Rule 8(d)[15] to treat the designation of an affirmative defense and prayer for relief as a counterclaim, if justice so requires."  (Id. (footnote added).)  As such, Defendant requests that this Court "treat the designation of the affirmative defense and prayer for relief as a counterclaim for the refund of the $10,000 assessed" by Customs.  (Id.)

---

[14]Court of International Trade Rule 7(b) states

> Before a motion for an extension of time . . ., a motion for intervention . . ., a motion for a preliminary injunction to enjoin the liquidation of entries, a motion for a hearing . . ., a motion for the designation of a test case or suspension . . ., or a motion for an order compelling disclosure or discovery . . ., is made, the moving party shall consult with all other parties to the action to attempt to reach agreement, in good faith, on the issues involved in the motion. . . .

[15]Court of International Trade Rule 8(d) states

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, discharge in bankruptcy, duress, estoppel, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

Defendant maintains that the merchandise "at issue in the two penalty cases for which [UPS] seeks a $10,000 refund" is merchandise Customs alleges UPS misclassified under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 8473.30.9000. (Id.) Defendant offers that the merchandise at issue in this case is also merchandise that Customs alleges that Defendant misclassified under HTSUS subheading 8473.30.9000. (Id.) Defendant reasons, therefore, that the merchandise that is the subject of the this case is the same merchandise that is the subject of the $10,000 penalty refund claim. (Id. at 3-4.)

Lastly, Defendant requests that–if the Court is unwilling to treat its affirmative defense and prayer for relief as a counterclaim–it be allowed to amend its answer to properly plead its counterclaim. Defendant presses that "[j]ustice so requires this amendment." (Id. at 4.)

### C.      Plaintiff's Reply

In Plaintiff's Reply in Support of Its Motion to Strike and Opposition to Defendant's Alternative Motion to Assert a Counterclaim ("Plaintiff's Reply"), Plaintiff addresses Defendant's arguments against its Motion to Strike. Plaintiff points out that Defendant's $10,000 penalty refund claim was not asserted in a pleading filed in this case. (Pl.'s Reply at 2.) Plaintiff notes that Defendant first asserted its $10,000 penalty refund claim in a motion for summary judgment, which–according to Plaintiff–is not a pleading. (Id.) Plaintiff submits that the twenty-day filing requirement of Court of International Trade Rule 12(f) is triggered only by service of a pleading. Therefore, Plaintiff contends that the rule is inapplicable in this case and does not render Plaintiff's Motion untimely. (Id.)

Plaintiff also takes issue with Defendant's invocation of Court of International Trade Rule 7(b) and its consultation requirement. Plaintiff advises that the rule does not include motions to strike amongst those requiring consultation prior to filing. Accordingly, Plaintiff concludes that its motion was proper and no pre-filing consultation was required. (Id. at 2-3.)

Plaintiff next contends that "[i]t is plain that UPS never asserted a $10,000 penalty refund claim as a counterclaim or affirmative defense within any pleading." (Id. at 3.) Plaintiff posits that the fifth affirmative defense does not support Defendant's penalty refund claim because the fifth affirmative defense "is nothing more than an asserted cap upon its liability in this action." (Id.) Plaintiff, therefore, reasons that Defendant's "prayer for relief cannot be construed as encompassing a $10,000 penalty refund claim." (Id. at 3-4.)

Lastly, Plaintiff reasserts that Defendant's $10,000 penalty refund claim falls outside the jurisdiction of this Court. According to Plaintiff, Defendant's "$10,000 penalty refund claim concerns the reimbursement of paid penalties from 15 entries involving specific imported merchandise that was misclassified under subheading 8473.30.9000 of the HTSUS." (Id. at 4.) Plaintiff claims that the present matter relates to "the collection of unpaid penalties involving specific imported merchandise from 45 different entries." (Id. (emphasis in original).) Plaintiff concludes by stating that "[b]ecause the entries for which penalties are still outstanding involve merchandise that is different from the imported merchandise involved in the 15 entries for which penalties have already been paid, UPS's [$]10,000 penalty refund claim is beyond the scope of this Court's counterclaim jurisdiction." (Id. at 5.)

## II.        PARTIAL MOTION FOR SUMMARY JUDGMENT

### A.        Defendant's Contentions

Defendant argues that Plaintiff is statutorily barred from pursuing a penalty case against

Defendant because Plaintiff is limited to

(1)        a <u>single</u> monetary penalty against a broker for any violation or violations of the broker statute that precede the pre-penalty notice, which penalty Defendant has satisfied; <u>or</u>
(2)        a maximum penalty of $30,000 for all alleged violations that occurred prior to the first pre-penalty notice Customs issued, of which amount Plaintiff has already collected $15,000.

(Def.'s Summ. J. Br. at 12-13.)

In support of its positions, Defendant states that "[t]he phrase 'for a violation or

violations' makes clear the Customs [Fines, Penalties and Forfeitures ("FP&F")] Officer is

limited to the issuance of a single penalty (and consequently a single Pre-penalty Notice), subject

to the $30,000 maximum, even where the broker has committed multiple violations of the broker

statute." (<u>Id.</u> at 15.) Defendant further argues that the statute "clearly evinces an intent to place a

monetary cap on the penalty Customs may impose against a customs broker." (<u>Id.</u>) Defendant

maintains that the statute's legislative history and prior case law support its interpretation.

Specifically, Defendant quotes testimony of the then-President of the NCBFFAA before the

House Ways and Means Subcommittee.

> The first sentence of § 641(d)(2)(A) specifies <u>a $30,000 maximum monetary penalty</u>. This maximum amount is *intended to apply* to <u>all violations committed prior to the date of issue of notice under this provision</u>.

(<u>Id.</u> at 16 (citation omitted) (underscoring in original) (italics added).) Defendant explains that

the language in question was "the result of a deliberated and negotiated agreement between

Customs and the customs brokerage industry." (Id. at 17.)  Defendant alleges that Customs is

now engaged in an effort to "undo the delicate balance struck by Congress, the industry and the

agency at the time of enactment." (Id.)  Defendant concludes that because (1) Customs is limited

to one pre-penalty notice and penalty covering all violations of the broker statute prior to the

issuance of the notice, and (2) Defendant received and paid not one, but three, penalties covering

the same period of time, Customs is precluded from seeking the five additional penalties claimed

in its Complaint. (Id. at 20-21.)

Defendant next argues–even if Customs is allowed to issue multiple pre-penalty notices

for violations that occurred prior to the issuance of the first pre-penalty notice–that the total of

the multiple notices cannot exceed $30,000.  Defendant reasons that any other result would

render superfluous the statutory phrase "in total for a violation or violations." (Id. at 21.)  After

comparing other penalty provisions in the broker statute, Defendant asserts that "only subsection

(d)(2)(A) contains language limiting the aggregate penalty amount that Customs may assess."

(Id. at 22.)  Defendant posits that Congress would have chosen different language had it intended

the statute to limit the penalty amount Customs could impose for a single violation. (Id. at 23.)

Defendant adds that the statutory provision in question implements the negotiated positions of

both Customs and the brokerage industry. (Id. at 24.)  In addition, Defendant suggests that

statutory grants of authority to agencies to impose penalties must be narrowly construed. (Id. at

24-26.)  Lastly, Defendant advocates that Customs' position in this case contravenes the agency's

regulations and past practices and, therefore, should not be upheld by this Court. (Id. at 28-29.)

B.       **Plaintiff's Contentions**

In its Response, Plaintiff argues that Defendant's interpretation of § 1641(d)(2)(A) is

without merit because

(1)      Section 1641(d)(2)(A) is clear and unambiguous and does not prohibit Customs
         from pursuing multiple penalties, which in total exceed $30,000, for violations of
         the broker statute that occurred prior to the first pre-penalty notice;
(2)      The legislative history does not suggest that Congress sought to limit a broker's
         liability for multiple violations, and, in fact, quite the contrary is true;
(3)      Customs construed and applied its statutory grant of authority in a reasonable
         manner; therefore, the agency is entitled to deference;[16]
(4)      The statute, existing regulations, administrative procedures, mitigation guidelines,
         and de novo review by this court act in concert to prevent Customs from abusing
         its discretion and assessing excessive penalties against any one broker; and
(5)      Adopting Defendant's position would inhibit Customs from enforcing the customs
         laws and provide undue protection to customs brokers who violate their statutory
         obligations.

(Pl.'s Summ. J. Resp. at 2-3.)

According to Plaintiff, § 1641(d)(2)(A) has only two requirements: "(1) no single

monetary penalty may exceed $30,000, and (2) each monetary penalty must be preceded by

written notice" (i.e., a pre-penalty notice).  (Id. at 8.)  Plaintiff maintains that § 1641(d)(2)(A)

does not restrict Customs to only one penalty covering all violations of the broker statute that

occurred prior to the issuance of the pre-penalty notice.  Instead, Plaintiff states that Congress'

use of the disjunctive "or" ("violation or violations") in § 1641(d)(2)(A) "must be construed as

providing Customs with the flexibility and discretion to include either a single violation or

multiple violations within any given pre-penalty notice."  (Id. at 9.)  Plaintiff submits that reading

§ 1641(d)(2)(A) to limit Customs to one pre-penalty notice for all violations occurring before

---

[16]See Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

that pre-penalty notice "would eviscerate Customs' ability to include a single violation within

any given pre-penalty notice, and it would render the word 'violation' superfluous and

inoperative." (Id. at 9-10.)  Had Congress intended the singe-penalty interpretation pressed by

Defendant, Plaintiff insists that Congress would not have included "violation" or, alternatively,

would have inserted the phrase "for all violations of this subsection" into the statute.  (Id. at 10.)

Plaintiff next contends that the language of the statute does not limit Customs to a single

aggregate penalty of $30,000 for multiple violations of the broker statute.  In support of this

position, Plaintiff notes that application of the last antecedent rule[17] to § 1641(d)(2)(A) results in

a reading contrary to Defendant's interpretation.  Because the phrase "in total" succeeds

"monetary penalty not to exceed $30,000," Plaintiff reads that

> . . .the words 'monetary penalty not to exceed $30,000 in total for a violation or
> violations' demonstrate a clear congressional intent to establish a per-penalty
> maximum of '$30,000 in total,' and not an aggregate monetary limitation of
> $30,000 for all violations preceding a pre-penalty notice.  The phrase 'in total'
> modifies '$30,000,' while the phrase 'not to exceed $30,000' acts as a modifier of
> the words 'monetary penalty.'

(Id. at 10-11.)  Plaintiff also refutes that other penalty provisions in § 1641 indicate the intent of

Congress to limit Customs to a single monetary penalty or aggregate assessment of $30,000.  (Id.

at 11-13.)

---

[17]The last antecedent rule is

> A cannon of statutory construction that relative or qualifying words or phrases are
> to be applied to the words or phrases immediately preceding, and as not extending
> to or including other words, phrases, or clauses more remote, unless such
> extension or inclusion is clearly required by the intent and meaning of the context,
> or disclosed by an examination of the entire act.

Black's Law Dictionary 882 (6th ed. 1990).

Next, Plaintiff states that the legislative history of § 1641 supports its reading of the

statute.  Plaintiff points out that the purpose of § 1641(d)(2)(A) was to give "'Customs the

opportunity . . . to apply penalties more effectively when brokers have violated the terms of their

licenses.'"  (Id. at 14 (quoting S. Rep. No. 98-308, at 72 (1984), as reprinted in 1984

U.S.C.C.A.N. 4910, 5031).)  Plaintiff urges that the NCBFFAA's statement in the legislative

history used by Defendant to bolster its position is "self-serving" and was not countenanced by

Congress.  (Id. at 17.)  Plaintiff adds that congressional committee testimony that precedes

passage of legislation is "weak evidence of legislative intent."  (Id. (quotation & citation

omitted).)  Furthermore, Plaintiff asks this Court to reject the NCBFFAA's submission as

unreliable and containing unsupported assertions.  (Id. at 18-20.)  According to Plaintiff, this

Court should ascribe no weight to any interpretation of § 1641(d)(2)(A) that relies upon the

unreliable, extrinsic evidence put before the Court by Defendant and the NCBFFAA.  (Id. at 20.)

Next, Plaintiff affirms that Customs' broad discretion to regulate broker conduct has a

long history and that the 1984 amendment to the broker act only added flexibility to the agency's

existing discretion.  (Id. at 21.)  Plaintiff ratiocinates that the position advanced by Defendant to

"limit[] Customs to a single monetary penalty or aggregate monetary assessment of $30,000 for

all violations preceding the issuance of a pre-penalty notice" is antithetical to Congress' grant of

broad discretion to Customs to monitor and regulate broker conduct.  (Id.)  Plaintiff adds that

Customs' discretion is not without limit.  Plaintiff explains that before issuing a penalty Customs

must undertake a specific administrative course, which is then subject to de novo review by this

Court.  (Id. at 27.)  These procedural safeguards–Plaintiff claims–protect brokers from agency

abuse.  (Id.)

Plaintiff also suggests that Defendant's reading of § 1641(d)(2)(A) would "eviscerate the

flexibility that Congress provided" by restricting Customs to license suspension or revocation for

violations of the broker statute that were not noted in the single pre-penalty notice Defendant

advocates.  (Id. at 29.)  Plaintiff further complains that limiting Customs to a single pre-penalty

notice for all preceding violations would "imped[e] the effective enforcement of the customs

laws" because the notice would apply to all violations regardless of type, seriousness, frequency,

or "geographic scope."  (Id. at 28-29.)

In the alternative, Plaintiff argues that this Court should grant Chevron deference and

uphold Customs' interpretation of § 1641(d)(2)(A) as a "reasonable construction and

application" of the broker statute.  (Id. at 22.)  Plaintiff adverts to the Customs regulations found

in 19 C.F.R. §§ 111.90-94, which implement § 1641(d)(2)(A) of the broker statute.  Plaintiff

calls the Court's attention to 19 C.F.R. § 111.91, which states

> **§ 111.91       Grounds for imposition of a monetary penalty; maximum
> penalty.**
> Customs may assess a monetary penalty or penalties as follows:
> (a)      In the case of a broker, in an amount not to exceed an aggregate of
> $30,000 for one or more of the reasons set forth in [the preceding
> Subpart] . . . .

19 C.F.R. § 111.91 (2000) (emphasis added).  Plaintiff submits that Customs' use of the

disjunctive "or" ("penalty or penalties") in its regulation "demonstrates that Customs may choose

to assess a single penalty or multiple penalties for a broker's violations, provided that no single

penalty exceeds the $30,000 per penalty cap as mandated by the statutory text of section

1641(d)(2)(A)." (Id. at 23.)

Plaintiff notes that Customs' mitigation guidelines corroborate the agency's position and

should receive some deference. (Id. at 24-25.) Plaintiff points out that the mitigation guidelines

state that "'[a] broker shall be penalized a maximum of $30,000 for any violation or violations of

the statute in any one penalty notice.'" (Id. at 24 (quoting 19 C.F.R. Pt. 171, App. C, § XII(A)

(2000)) (emphasis in Plaintiff's brief).) Plaintiff concludes that "both the number of penalties and

the amount of each penalty assessed was not only permitted under the regulations, but consistent

with suggested guidelines," and are not "an overly burdensome financial hardship for

[Defendant]." (Id. at 26.) As a result, Plaintiff insists that "Customs' construction and application

of its monetary penalty authority under section 1641(d)(2)(A) is both reasonable and permissible,

as demonstrated by its regulations, mitigation guidelines, and actions in this case." (Id.)


### C.      Defendant's Reply

Defendant first argues that Plaintiff is owed no deference as to Customs' interpretation of

§ 1641(d)(2)(A) because this Court reviews broker penalties de novo as to the facts, law, and

amount of penalty. (Def.'s Reply to Pl.'s Br. in Opp'n to Def.'s R. 56 Mot. for Summ. J. ("Def.'s

Summ. J. Reply") at 2-3.) Defendant then claims that Plaintiff exceeded its statutory authority by

issuing more than one penalty notice for violations that occurred prior to the issuance of the first

pre-penalty notice when those penalty notices totaled more than $30,000. According to

Defendant, the plain language of "§1641(d)(2)(A) provides that a customs broker may (1) be

subject to <u>a monetary penalty</u> (2) <u>not to exceed $30,000</u> (3) <u>in total</u> (4) <u>for a violation or

violations</u>." (<u>Id.</u> at 5 (citing § 1641(d)(2)(A)) (emphasis supplied in Defendant's brief).)

Defendant presses that "[t]he plain language simply mandates that a customs broker is only

'subject to a monetary penalty . . . for a violation or violations' preceding the Pre-penalty Notice,

and that this monetary penalty is 'not to exceed $30,000 in total,' regardless of the number of

violations." (<u>Id.</u> at 6 (citation omitted).)

      Defendant also argues that Plaintiff mischaracterizes the legislative history of the penalty

provision of the broker statute. Defendant accuses Plaintiff of misleading this Court about the

extent of agreement between Customs and the NCBFFAA on the penalty provision of the broker

statute. (<u>Id.</u> at 8-9.) Defendant refutes Plaintiff's argument by stating that in his testimony before

Congress "the [then] Commissioner [of Customs] <u>specifically</u> identifies the monetary penalty

provision at subsection (d) as 'one of the more significant areas <u>where</u> {Customs and the

NCBF[F]AA} do agree.'" (<u>Id.</u> at 9 (citation omitted) (emphasis supplied in Defendant's brief).)

      Defendant next calls Plaintiff's application and interpretation of § 1641(d)(2)(A) in this

case "arbitrary and unprincipled." (<u>Id.</u> at 12.) Defendant suggests that prior case law indicates a

conflict in Customs' reasoning. In two cases it cited, Defendant points out that Customs limited

the penalties it sought to the statutory $30,000 maximum for violations Customs discovered in the

context of audits. (<u>Id.</u>) Defendant takes issue with Plaintiff's argument that these cases are

irrelevant because Customs has imposed upon itself the statutory limit of $30,000 for all

violations discovered in the context of an audit. (<u>Id.</u>) Defendant objects to Customs' distinction

between violations discovered in the context of an audit and those discovered outside an audit.

Lastly, Defendant stresses that judicial review is not an adequate restraint on Customs'

ability–under Customs' interpretation of the broker penalty statute–to impose "exorbitant"

penalties against a broker.  (Id. at 13-14.)  Defendant states that "[j]udicial review is an important

safeguard to be sure, but it does not replace the statutory bar Congress established to protect

against the potential harm to a customs broker's livelihood that may result from the imposition of

unlimited penalty assessments."  (Id. at 14.)

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1582(1) (2000).

## DISCUSSION

## I.      **Motion to Strike**

A.      Plaintiff's Motion to Strike is Denied.

As a general rule, courts do not favor motions to strike.  Jimlar Corp. v. United States, 10

CIT 671, 673, 647 F. Supp. 932 (1986).  As a result, such motions are not often granted.  See id.

Whether to grant a motion to strike is within the broad discretion of the court.  Id.

A motion to strike is an "extraordinary remedy" that a court should grant "only in cases

where there has been a flagrant disregard of the rules of court."  Id.  Consequently, a court will

grant a motion to strike only when "the brief demonstrates a lack of good faith" or when "the

court would be prejudiced or misled by the inclusion in the brief of the improper material."  Id.

> [T]here is no occasion for a party to move to strike portions of an opponent's brief
> (unless they be scandalous or defamatory) merely because he thinks they contain

> material that is incorrect, inappropriate, or not a part of the record. The appropriate
> method of raising those issues is by so arguing, either in the brief or in a
> supplemental memorandum, but not by filing a motion to strike.

Acciai Speciali Terni S.P.A. v. United States, 24 CIT 1211, 1217, 120 F. Supp. 2d 1101 (2000)

(quoting Dillon v. United States, 229 Ct. Cl. 631, 636 (1981)). If requiring an amended filing by

the offending party would resolve the dispute, the court should consider such, rather than the more

drastic measure of striking a filing or portion thereof. See Beker Indus. Corp. v. United States, 7

CIT 199, 203, 585 F. Supp. 663 (1984).

In the matter before this Court, Plaintiff has not demonstrated that Defendant's penalty

refund claim was made in bad faith or would prejudice or mislead the Court. See Jimlar, 10 CIT

at 673. Further, this Court sees no indication that Defendant's penalty refund claim is scandalous

or defamatory. Acciai Speciali, 24 CIT at 1217. Accordingly, this Court will not strike

Defendant's penalty refund claim from the record.

Although technically moot given the Court's denial of Plaintiff's motion, it is worth

mentioning that the Court agrees with Plaintiff that its Motion to Strike was timely and properly

filed. A motion for summary judgment is not a pleading (see USCIT R. 7(a)), and only the filing

of a pleading triggers the twenty-day filing limitation of Court of International Trade Rule 12(f).

Also, as a general principal, this Court encourages and expects cooperation amongst parties

engaged in litigation before it. However, Plaintiff–despite Defendant's accusation to the

contrary–was not required by this court's rules to consult with Defendant prior to filing its Motion

to Strike. See USCIT R. 7(b).

B.        Defendant's Requests in the Alternative Are Denied.

In its response brief, Defendant requests that this Court treat its "designation of an

affirmative defense and prayer for relief as a counterclaim." (Def.'s Resp. at 3.)  This Court

cannot oblige Defendant.  In order to consider Defendant's fifth affirmative defense[18] as a

counterclaim, it must comply with this court's rules.  Rule 8(a) requires that a counterclaim

> . . . contain (1) a short and plain statement of the grounds upon which the court's
> jurisdiction depends, unless the court already has jurisdiction and the claim needs
> no new grounds of jurisdiction to support it, (2) a short and plain statement of the
> claim showing that the pleader is entitled to relief, and (3) a demand for judgment
> for the relief the pleader seeks. . . .

USCIT R. 8(a).  Defendant's affirmative defense lacks both "a short and plain statement of the

claim showing [Defendant] is entitled to relief" and "a demand for judgment for the relief

[Defendant] seeks."  Id.  The first time Defendant's $10,000 penalty refund claim appears is in its

Summary Judgment Motion.  This Court will not read into Defendant's Answer a claim that is not

present therein.  Moreover, Defendant's request in its Answer for an order granting "such further

relief as is just and proper" (Def.'s Answer & Jury Demand at 7) is overly broad and insufficient

for this Court to consider it Defendant's demand for a $10,000 penalty refund.  Accordingly, this

Court declines to treat Defendant's affirmative defense as a counterclaim.

Defendant also requests that this Court allow it to amend its Answer to properly plead the

$10,000 penalty refund as a counterclaim.  (Def.'s Resp. at 4.)  Although this Court will not strike

---

[18]Defendant's fifth affirmative defense states that "Plaintiff may not recover civil
penalties against [Defendant], a licensed customs broker, in excess of $30,000 under 19 U.S.C.
§ 1641(d)(2)(A) for the entries filed during the time period covered by the six penalty cases
referenced in Paragraphs 8-13 of the Complaint."  (Def.'s Answer & Jury Demand at 6.)

Defendant's $10,000 penalty refund claim, neither will the Court hear of it further.  As Plaintiff

correctly points out, this Court has jurisdiction over only a counterclaim or cross-claim if

    (1)      such claim or action involves the imported merchandise that is the subject matter of such civil action, or

    (2)      such claim or action is to recover upon a bond or customs duties relating to such merchandise.

28 U.S.C. § 1583.  The action before this Court is not one seeking to "recover on a bond or

customs duties."  Further, Defendant's counterclaim relates solely to penalties it paid Customs

related to the misclassification of imported merchandise that was entered on entries that are not

now before this Court.  (See Pl.'s Mot. to Strike at 3.)

Defendant's argument that the alleged violation–misclassification of imported

merchandise–is the same on each pre-penalty notice Customs issued does not compel this Court's

jurisdiction.  (Def.'s Resp. at 3-4.)  The Court must have jurisdiction over a claim or action related

to the specific imported merchandise that is the subject matter of the litigation.  Those entries and

the specific imported merchandise entered thereon for which Defendant remitted payments on

penalty notices are not a part of Plaintiff's Amended Complaint.  Plaintiff is before this Court

seeking to enforce penalties for alleged violations that occurred on other entries, separate and

distinct from those for which Defendant complied with the penalty notices.  Therefore, the entries

for which Defendant remitted payment on penalty notices are not part of the present litigation.

Even if this Court were to allow Defendant to amend its answer to include the $10,000

penalty refund claim, this Court would be unable to hear the claim because it lacks jurisdiction

over the underlying entries.  See United States v. Shabahang Persian Carpets, Ltd., 21 CIT 360,

361, 963 F. Supp. 1207 (1997) (court found no counterclaim jurisdiction where claim did not

involve merchandise that was the subject of the pending action).  The most expeditious and

judicially efficient course is for this Court to rule on the jurisdiction issue now.  Because this

Court does not have jurisdiction over the entries that are the bases of Defendant's asserted

counterclaim, this Court denies Defendant's request to amend its Answer.

## II.     **Partial Motion for Summary Judgment**

### A.     Standard of Review

"This case involves issues of statutory interpretation, which is a question of law subject to

de novo review."  Lee v. United States, 329 F.3d 817, 820 (Fed Cir. 2003) (citing U.S. Steel

Group v. United States, 225 F.3d 1284, 1286 (Fed. Cir. 2000)).  However, the broker statute does

not specify the standard of review the court should apply when resolving disputes over agency

decisions pursuant to § 1641(d)(2)(A).  Although there is no standard of review specified for the

relevant agency decision, the broker statute does establish that Customs' findings of fact are

conclusive if supported by substantial evidence.  19 U.S.C. § 1641(e)(3) (2000).  "Substantial

evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a

conclusion."  Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961

(1986) (citations omitted), aff'd, 810 F.2d 1137 (Fed. Cir. 1987).  In reviewing an agency

decision, "[t]he Court may not substitute its judgment for that of the administrative agency," and

"the possibility of drawing two inconsistent conclusions from the evidence does not prevent the

agency's finding from being supported by substantial evidence."  Barnhart v. U.S. Treasury Dep't,

9 CIT 287, 290, 613 F. Supp. 370 (1985).

To fix the standard of review, the court looks, first, to 28 U.S.C. § 2640, which provides

the scope of review that applies in this case.  United States v. Ricci, 21 CIT 1145, 1146, 985 F.

Supp. 1145 (1997).  Section 2640 requires that the court resolve disputes brought pursuant to

§ 1641(d)(2)(A) "upon the basis of the record made before the court."  28 U.S.C. § 2640 (2000).

However, § 2640 also does not specify a standard of review.  As a result, the Court must look to

the Administrative Procedure Act ("APA") for the applicable standard of review.[19]  Section 706

provides the standard of review for the APA and in relevant part reads

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall–
> . . .
> (2)  hold unlawful and set aside agency action, findings, and conclusions found to be–
> (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2)(A)-(F).

_____

[19]In its brief, Defendant invokes the APA as setting forth this Court's standard of review, though not to the extent done here.  (Def.'s Summ. J. Mot. at 11.)  On the other hand, Plaintiff does not acknowledge the APA as providing the applicable standard of review and, instead, relies solely on Chevron as the source of this Court's standard of review in this case.  (Pl.'s Summ. J. Resp. at 6-7.)

Section 706 sets forth six separate standards. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413 (1971), rev'd on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). In Overton Park, the United States Supreme Court offered guidance on when to apply these various standards. Id. at 413-14. The Supreme Court directed that when reviewing agency actions, subsections A through D always apply but subsections E and F should only be applied in narrow, limited situations. Id.; see also Hyundai Elecs. Indus. Co., Ltd. v. U.S. Int'l Trade Comm'n, 899 F.2d 1204, 1208 (Fed. Cir. 1990). Since the agency action in question in this case neither arises out of a rulemaking provision of the APA nor is based on a public adjudicatory hearing, subsection E does not apply. Overton Park, 401 U.S. at 414. Subsection F de novo review is applicable only when (1) "the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or (2) "issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." Id. at 415. On the record before this Court, Defendant has made no allegations of inadequate fact-finding, and no new issues are raised. Consequently, subsection F is also inapposite.

Regardless of the inapplicability of subsections E and F, the "generally applicable standards of section 706 require the reviewing court to engage in a substantial inquiry," which means that the review must be "thorough, probing, in-depth." Id. at 415. This does not mean, however, that the court is "empowered to substitute its judgment for that of the agency." Id. at 416; see also Duty Free Int'l, Inc. v. United States, 19 CIT 679, 681 (1995). This Court notes that the "ultimate standard of review is a narrow one." Overton Park, 401 U.S. at 416.

Two standards[20] articulated in section 706 are relevant in this matter. Because Plaintiff asserted a statutory violation claim, subsection C is invoked: (C) in excess of statutory jurisdiction, authority, or limitation. 5 U.S.C. § 706(2)(C). In addition to this standard, the residual standard, subsection A, also applies. See In re Robert J. Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000) ("courts have recognized that the 'arbitrary, capricious' standard is one of default"). The "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" standard is deemed the most deferential. Id. ("this standard is generally considered to be the most deferential of the APA standards of review"). Courts have noted that "the 'touchstone' of the 'arbitrary, capricious' standard is rationality." Id. (citing Hyundai, 899 F.2d at 1209). Thus, if either subsection A or C is not satisfied, this Court will set aside the agency action. But see Ricci, 21 CIT at 1146 (in reviewing a case brought under 19 U.S.C. § 1641(d)(2)(A), the court derived the standard of review from section F of the APA).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). On

---

[20]Subsection D appears to be irrelevant to the case at hand. Agency action "without observance of procedure required by law" indicates a due process-type allegation, which was not presented in this case. 5 U.S.C. § 706(D). Likewise, subsection B is inapposite because no "constitutional right, power, privilege, or immunity" is invoked in this matter. 5 U.S.C. § 706(B).

a motion for summary judgment, the moving party bears the burden of proving that there is no genuine issue of material fact that would preclude judgment in its favor. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985). However, the party opposing the motion for summary judgment may not rest on its pleadings. Ugg Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F. Supp. 848 (1993). Rather, the nonmovant must present "specific facts" that establish a genuine issue of triable fact. Id. Further, "[t]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), and the court "must resolve all doubt over factual issues in favor of the party opposing summary judgment" SRI, 775 F.2d at 1116. "Partial summary judgment is appropriate when it appears that some aspects of a claim are not genuinely controvertible and genuine issues remain regarding the rest of the claim." Ugg, 17 CIT at 83 (quotation and citation omitted).

 

       B.       Plaintiff's Partial Summary Judgment Motion is Denied.

At the outset, this Court notes that Plaintiff is in substantial concurrence with Defendant's Statement of Material Facts Not in Dispute. (Pl.'s Stmt. of Facts.) The issues with which Plaintiff is in disagreement are not material to the matter before this Court. Thus, partial summary judgment is appropriate.

The issue this Court has been asked to decide is the meaning of the statutory phrase "a monetary penalty not to exceed $30,000 in total for a violation or violations of" 19 U.S.C. § 1641(d)(1). 19 U.S.C. § 1641(d)(2)(A). Defendant asks this Court to interpret the statute as

limiting Customs to one-and-only-one monetary penalty for all violations of the broker statute that occurred prior to the issuance of that single pre-penalty notice.  In the alternative, Defendant argues that the broker statute caps the monetary penalty Customs may assess to $30,000 for all violations that occur prior to the issuance of the <u>first</u> pre-penalty notice.  On the other side, Plaintiff asks this Court to interpret the statute as allowing Customs the discretion to issue multiple pre-penalty notices for violations that occur during a period prior to the issuance of the first pre-penalty notice, provided no single monetary penalty exceeds $30,000.  The scope of this provision in the broker statute is an issue of first impression before this court.

Frequently courts are called upon to resolve a conflict between parties on the interpretation of a statute.  In some such instances, the legislation before the court is drafted ambiguously by accident.  In other instances (as this Court suspects is the case here), the legislation is drafted purposefully in an unartful manner as the only way to arrive at a compromise position that could then be passed on to law.  <u>See</u> Mikva, Abner & Eric Lane, <u>An Introduction to Statutory Interpretation and the Legislative Process</u> 31-33 (Aspen Law & Bus. 1997) (discussing the enactment of the Civil Rights Act of 1991).  A third–though not necessarily final–alternative is legislation drafted with a known ambiguity to be resolved by agency regulation.  When the ambiguities in legislation lead to litigation, the courts are left to ferret out legislative intent, competing interests, and agency interpretation.  Having carefully considered the parties' and amicus briefs and other papers, this Court finds in favor of Plaintiff and denies Defendant's partial Summary Judgment Motion.

Both parties and the amicus have exhaustively briefed this Court on how and why the Court should adopt their chosen reading of the broker penalty statute. This Court has considered the respective arguments and has concluded that this matter boils down to a question of deference.

Congress delegated authority to Customs to "prescribe such rules and regulations relating to the customs business of customs brokers as the [agency] considers necessary to protect importers and the revenue of the United States." 19 U.S.C. § 1641(f) (2000). Accordingly, Customs promulgated a regulation for the imposition of a monetary penalty against a broker pursuant to § 1641(d)(2)(A). The regulation states that Customs may impose a monetary penalty against a broker "in an amount not to exceed an aggregate of $30,000 for one or more" of the violations specified in the broker statute and regulations, "provided that no license or permit suspension or revocation proceeding has been instituted against the broker." 19 C.F.R. § 111.91(a). In the mitigation guidelines for the regulations, Customs added that "[a] broker shall be penalized a maximum of $30,000 for any violation or violations of the statute in any one penalty notice." 19 C.F.R. Pt. 171, App. C, XII(A) (emphasis added). The mitigation guidelines also provide that "[i]f a broker is penalized to the maximum that statute will allow and continues to commit the same violation or violations, revocation or suspension of his license would be the appropriate sanction. Barring such revocation or suspension action, he may again be penalized to the maximum the statute will allow." Id. at XII(B) (emphasis added).

"In reviewing an agency's construction of a statute that it administers, this court addresses two questions outlined by the Supreme Court in Chevron." U.S. Steel Group v. United States, 225 F.3d 1284, 1286 (Fed. Cir. 2000). This Court first must determine "whether Congress has directly

spoken to the precise question at issue." Chevron, 467 U.S. at 842. If congressional intent is clear,

both the courts and the agency "must give effect to the unambiguously expressed intent of

Congress." Id. at 842-43 (footnote omitted); see also Household Credit Serv., Inc. v. Pfenning, 541

U.S. 232, 239 (2004).

If the statute is silent or ambiguous concerning the issue before it, the second question the

court must assess is whether the agency's interpretation "is based on a permissible construction of

the statute." Chevron, 467 U.S. at 843.

> If Congress has explicitly left a gap for the agency to fill, there is an express
> delegation of authority to the agency to elucidate a specific provision of the statute
> by regulation. Such legislative regulations are given controlling weight unless they
> are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the
> legislative delegation to an agency on a particular questions is implicit rather than
> explicit. In such a case, a court may not substitute its own construction of a
> statutory provision for a reasonable interpretation made by the administrator of an
> agency.

Id. at 843-44 (footnotes omitted).

However, courts are the final arbiters of statutory construction and "are not obliged to stand

aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent

with a statutory mandate or that frustrate congressional policy underlying a statute." SEC v. Sloan,

436 U.S. 103, 118 (1978) (quotation and citation omitted). Nevertheless, "[a] great amount of

deference is owed to an agency's interpretation of its own regulations." Lee, 329 F.3d at 822. "To

survive judicial scrutiny, an agency's construction need not be the only reasonable interpretation or

even the most reasonable interpretation. Rather, a court must defer to an agency's reasonable

interpretation of a statute even if the court might have preferred another." Koyo Seiko Co., Ltd. v.

United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (citations omitted).

In accordance with <u>Chevron</u>, this Court first considers whether Congress spoke directly on the issue before the Court. To reiterate, the provision in question states that

> the appropriate customs officer shall serve notice in writing upon any customs broker to show cause why the broker should not be subject to a monetary penalty not to exceed $30,000 in total for a violation or violations of this section.

19 U.S.C. § 1641(d)(2)(A). This Court finds that the language of the statute is ambiguous and does not speak to the precise question before the Court.

The broker penalty statute contemplates that a broker may receive a monetary penalty for one or more violations of the broker statute. However, the statute does not confine–as Defendant argues–Customs to one-and-only-one penalty notice. Further, the statute does not delimit a temporal restriction on Customs issuing more than one monetary penalty for discrete violations that occurred prior to the issuance of the first pre-penalty notice. In addition, the statute does not indicate that–if multiple pre-penalty notices are allowed–the notices that cover the period prior to the issuance of the first pre-penalty notice are limited in aggregate to $30,000.

This Court contemplates that to clearly arrive at Defendant's reading the statute may have stated to the effect that ". . . why the broker should not be subject to a <u>single</u> monetary penalty not to exceed $30,000 for <u>any and all</u> violations of this section <u>that occurred prior to the issuance of the pre-penalty notice</u>." On the other hand, for the statute to have clearly enunciated Plaintiff's position, it might have read ". . . why the broker should not be subject to a monetary penalty for one or more violations of this section, <u>provided that no single monetary penalty, whether or not it includes multiple violations, exceeds $30,000</u>." However, because Congress did not provide this

Court or the parties with unambiguous language, this Court is left to contemplate the second

question posed in <u>Chevron</u>: whether the agency's interpretation is reasonable.

Separate and apart from its brief, Customs articulated its interpretation of § 1641(d)(2)(A)

in its regulations, 19 C.F.R. § 111.91, and the mitigation guidelines.  As stated previously, the

regulations state that "Customs may assess a penalty or <u>penalties</u> . . . in an amount not to exceed an

aggregate of $30,000 for one or more" violations of the broker statute.  19 C.F.R. § 111.91

(emphasis added).  In promulgating the broker penalty regulations, which were subject to notice

and comment, 50 Fed. Reg. 31,871 (Aug. 7, 1985), Customs clearly adopted the position that it

was entitled to impose more than one monetary penalty for violations of the broker statute.

Although the regulation might be read to limit any penalties imposed to an aggregate of $30,000,

Customs clarified its position in the mitigation guidelines, which state that Customs may penalize a

broker "a maximum of $30,000 for any violation or violations of the statute in <u>any one</u> penalty

notice."  19 C.F.R. Pt. 171, App. C., XII(A) (emphasis added).  While the mitigation guidelines

were not subject to notice and comment, they are "still entitled to some deference, since [they are]

a 'permissible construction of the statute.'"  <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) (quotation and

citations omitted).

Neither the broker penalty statute nor Customs regulations place any temporal restriction on a penalty issued by Customs, and this Court sees no reason to read one into the statute.[21]  This Court also does not read the statute as prescribing a limit on the number of pre-penalty notices Customs may issue.  This Court finds that the regulations and mitigation guidelines express a reasonable interpretation of the broker penalty statute.  Accordingly, Customs' reading of the broker penalty statute is owed deference by this Court.  If the statute is not written in a manner consistent with the understanding of Defendant and the NCBFFAA, this Court is not the proper venue in which to attempt to effect a change.

By the foregoing, this Court has decided the substance of this matter.  Nonetheless, the Court adds that it agrees with Plaintiff that Defendant's "parade of horribles" is without bases. (Pl.'s Summ. J. Resp. at 26.)  As previously noted, the scope of § 1641(d)(2)(A) is an issue of first impression before this court.  As such, it is apparent to this Court that Customs has not taken advantage of or abused the penalty authority the agency was granted in the broker statute.  Had Customs been in the practice of imposing multiple penalties for violations that occurred prior to the issuance of the first pre-penalty notice, this Court certainly would have expected to have had this issue presented before now.  Indeed, accepting–as it must–the facts in the light most favorable to Plaintiff, Defendant's own allegedly egregious flaunting of its responsibilities under the broker

---

[21]The Court notes that all brokers and the NCBFFAA had the opportunity to provide Customs with comments on the proposed regulations before such were adopted.

statute after repeated training and warning by Customs precipitated the agency's monetary

sanctions.[22]

Further, Customs should not be hamstrung by Defendant's narrow reading of the broker

penalty statute. Were this Court to accept Defendant's interpretation, Customs would be required

to ferret out all possible broker violations before issuing its one-and-only-one pre-penalty notice.

To require such of the agency is absurd. Over time, circumstances and information may give rise

to Customs gaining knowledge of various broker indiscretions. At such times, Customs must have

the discretion–and the broker penalty statute gives Customs the authority–to immediately take

action to bring the errant broker back into line. Were this Court to embrace Defendant's one-and-

only-one penalty concept, Customs would have to choose between missing an opportunity for

swift, corrective action whilst foregoing sanction for other potential, prior errors or waiting to

amass information concerning other violations whilst the broker continues to contravene its

obligations under the broker statute. This Hobson's choice is neither efficient nor effective in

carrying out the main objective of the broker penalty statute, which is to "to apply penalties more

effectively when brokers have violated the terms of their licenses." S. Rep. No. 98-308, at 72.

Although this is Court appreciative of NCBFFAA's interest in this matter, it cannot accept

the self-serving comments and recollections of the former president of the NCBFFAA as

controlling the outcome of this case. The Court recognizes that "the testimony of witnesses before

congressional committees prior to passage of legislation is generally weak evidence of legislative

---

[22]This Court notes that Defendant might count itself fortunate that–in light of Defendant's many alleged violations–Customs merely sought monetary penalties against Defendant, rather than the more onerous penalty of suspension or revocation of Defendant's license. See 19 C.F.R. Pt. 171, App. C, XII(B).

intent." Public Citizen v. Farm Credit Admin., 938 F.2d 290, 292 (D.C. Cir. 1991).  When called

upon to interpret a statute,

> the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.  Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms.  First, legislative history is itself often murky, ambiguous, and contradictory.  Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'  Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members–or, worse yet, unelected staffers and lobbyists–both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

Exxon Mobil Corp. v. Allapattah Serv., Inc., 125 S.Ct. 2611, 2626 (2005) (internal citation

omitted).  This Court notes that while the NCBFFAA appears to have arrived at one interpretation

of the broker penalty statute, Congress did not clearly adopt legislation consistent with that

construction, or–rather– inconsistent with Customs' reading of the legislation.  Nothing in the

legislative history refutes Plaintiff's position, and Plaintiff's interpretation of the statute is

reasonable.

This Court also will briefly address Defendant's argument that Customs' actions in this

matter are inconsistent with prior agency precedent.  This is a contention the Court does not accept.

Defendant identifies two cases in which Customs issued a single pre-penalty notice for $30,000

covering multiple offenses committed by the respective broker.  See Ricci, 21 CIT 1145; Lee, 26

CIT 384.[23]  The facts of each case reveal that Customs imposed each monetary penalty against the broker subsequent to an audit.  Customs' mitigation guidelines limit the agency to an aggregate penalty of $30,000 for all violations discovered during an audit.  19 C.F.R. Pt. 171, App. C, XXII(C).  Because the matter before this Court does not involve violations discovered during an audit or the mitigation guideline therefor, the cases are inapposite.

As a result of the deference accorded to Customs' construction of § 1641(d)(2)(A) and for the other reasons stated herein, this Court does not reach the other issues raised by the parties.

CONCLUSION

For the foregoing reasons, this Court denies Plaintiff's Motion to Strike, denies Defendant's request to amend its answer, and denies Defendant's partial Summary Judgment Motion.

/s/      Gregory W. Carman
Gregory W. Carman

Dated:  June 28, 2006.
        New York, New York

---

[23]Lee is of dubious relevance to the matter before this Court.  In Lee, the plaintiff brought suit against the government for revoking his customs broker license.  The matter of the monetary penalties Customs imposed against the plaintiff was not before the court.