**Slip Op. 10–11**

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

UNITED STATES,

                      Plaintiff,

        v.

UPS CUSTOMHOUSE BROKERAGE, INC.,

                      Defendant.

</td></tr>
</table>

**BEFORE: JUDGE GREGORY W. CARMAN**
Court No. 04-00650

[Held:  At trial, Plaintiff failed to prove entitlement to recover monetary penalties imposed on Defendant customs broker.  Having failed to show grounds for a rehearing, Plaintiff's request for an additional evidentiary proceeding is denied.  Because the Court is designated by statute to decide the issues here, remand to Customs is not required.  Discretionary remand would inappropriately allow Plaintiff to create a factual basis for recovery after trial, rendering Plaintiff's burden of proof meaningless.  Judgment will issue in favor of Defendant.]

Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Jessica R. Toplin); Edward Greenwald, of counsel, U.S. Customs and Border Protection, Department of Homeland Security, for Plaintiff.

Akin, Gump, Strauss, Hauer & Feld, LLP (Terence J. Lynam, Lars-Erik A. Hjelm, Natalya Daria Dobrowolsky, Lisa-Marie W. Ross, Thomas James McCarthy), for Defendant.

January 28, 2010

## OPINION & ORDER

**CARMAN, JUDGE:** This case comes before the Court on remand from the Court of Appeals for the Federal Circuit ("Court of Appeals").  The United States ("Plaintiff" or "government") brought this action pursuant to 28 U.S.C. § 1582(1) against Defendant,

UPS Customhouse Brokerage, Inc. ("UPS"), seeking to recover monetary penalties of $75,000 imposed by the Bureau of Customs and Border Protection ("Customs") due to UPS's alleged failure to exercise responsible supervision and control over its customs brokerage business in violation of section 641(b)(4) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1641(b)(4) (2000).

This Court has issued four prior decisions regarding the instant litigation, and the Court of Appeals has issued two. First, the Court denied Defendant's motion for partial summary judgment and Plaintiff's motion to strike. United States v. UPS Customhouse Brokerage, Inc., 30 CIT 808, 442 F. Supp. 2d 1290 (2006) ("UPS I"). The Court certified an interlocutory appeal by Defendant, but the Court of Appeals denied permission to appeal. United States v. UPS Customhouse Brokerage, Inc., 30 CIT 1612, 464 F. Supp. 2d 1364 ("UPS II"), appeal denied, 213 F. App'x 985, 986, 2006 WL 3913545, at *1 (Fed. Cir. 2006). Plaintiff subsequently filed a motion for summary judgment, which the Court denied. United States v. UPS Customhouse Brokerage, Inc., 31 CIT 1023, 2007 WL 1894211 (2007) ("UPS III"). The Court thereafter conducted a bench trial, at the conclusion of which the Court found UPS liable for failure to exercise responsible supervision and control of its customs business, and entered judgment for the United States and against UPS. United States v. UPS Customhouse Brokerage, Inc., 32 CIT ____, 558 F. Supp. 2d 1331 (2008) ("UPS IV"). UPS successfully appealed, and the Court of Appeals issued an opinion affirming in part, vacating in part, and remanding in part.

United States v. UPS Customhouse Brokerage, Inc., 575 F.3d 1376 (Fed. Cir. 2009) ("UPS

V").  The Court of Appeals held that Customs was required to consider each of the ten

factors specifically listed in 19 U.S.C. § 111.1 when determining that Defendant failed to

exercise responsible supervision and control of its customs business as required by 19

U.S.C. § 1641(b)(4).[1]  UPS V, 575 F.3d at 1382.

Because the Court of Appeals affirmed in part, vacated in part, and remanded in

part this Court's post-trial opinion and judgment, the Court must now determine the

appropriate action to be taken on remand.  On November 5, 2009, the Court held a

conference with counsel for the parties to discuss this question, and counsel submitted

briefs to the Court on November 20, 2009.

In partially reversing this Court's judgment as to liability, the Court of Appeals

stated:  "Because Customs did not consider all ten factors listed in 19 C.F.R. § 111.1, its

determination that UPS violated 19 U.S.C. § 1641 was improper."  Id. at 1383.  The

decision of the Court of Appeals makes plain that "[a]n agency must follow its own

regulations," and "Customs failed to do so."  Id. at 1382-83.  This Court, in turn, "erred

in upholding [Customs]'s determination that UPS did not exercise responsible

---

[1]  The factors of responsible supervision and control listed in 19 C.F.R. § 111.1 are referred to in this opinion variously as the "ten factors," "§ 111.1 factors," or simply "factors."  "Broker statute" refers generally to 19 U.S.C. § 1641, which sets forth requirements and procedures applicable to customs brokers, including the "responsible supervision and control" mandate at § 1641(b)(4) and a procedure to impose monetary penalties at § 1641(d)(2)(A).  "Broker regulation" will refer generally to 19 C.F.R. Part 111, which inter alia defines "responsible supervision and control" and elaborates how Customs will implement the penalty procedure of § 1641(d)(2)(A).

supervision and control in violation of 19 U.S.C. § 1641[.]" Id. at 1378. The Court

"up[held Customs]'s determination" by entering a judgment permitting Plaintiff to

recover a civil penalty under 28 U.S.C. § 1582(1), despite Plaintiff's improper underlying

determination.

As discussed fully below, Plaintiff did not establish at trial that Customs properly

considered all ten § 111.1 factors. While the Court of Appeals' opinion made clear that

Customs is required to consider the ten factors when imposing a monetary penalty

upon a broker for lack of responsible supervision and control, the opinion did not

identify which Customs official bears this responsibility. The Court concludes that the

statute authorizing Customs to impose a monetary penalty for a § 1641(b)(4) violation

requires that "the appropriate . . . customs officer shall" perform the consideration of

the ten factors. See § 1641(d)(2)(A). Customs regulations indicate that the "appropriate

customs officer" is usually the Fines, Penalties, and Forfeitures Officer ("FP&F Officer")

for the relevant port. See 19 C.F.R. §§ 111.94, 171.31.[2] The trial record establishes that

the FP&F Officer required to consider the ten factors in imposing the penalties at issue

was Mr. Bert Webster. See infra, Analysis § II.C. Plaintiff, despite ample opportunity,

did not present any evidence that Mr. Webster considered the ten § 111.1 factors. Nor

did Plaintiff adduce evidence upon which the Court could have independently

considered the ten factors. Therefore, Plaintiff failed to prove at trial that Customs

---

[2] As discussed further below, the Commissioner of Customs is the appropriate
officer in rare circumstances that the evidence indicates were not present here. See 19
C.F.R. § 171.31.

complied with 19 C.F.R. § 111.1 when imposing the penalties at issue, and it is not entitled to recovery.

Plaintiff has not shown grounds for the granting of a further evidentiary hearing. Moreover, the evidence it has offered to present at such a proceeding could not, in any event, demonstrate proper consideration of the ten factors. For these reasons, Plaintiff's request to enter further evidence is denied. Contrary to Defendant's position, remand to Customs for further administrative proceedings is not required, because the Court is designated by statute to decide the issues in this case. Additionally, discretionary remand under 28 U.S.C. § 2643 would inappropriately permit Plaintiff to create—after the conclusion of the trial—a factual basis for recovery, rendering Plaintiff's burden of proof meaningless. The Court therefore denies the request for remand. Judgment will issue for Defendant.

BACKGROUND

I.      Post-Trial Opinion and Court of Appeals Opinion

        A.      Relevant Issues in the Court's Post-trial Opinion and Judgment

Following trial de novo, the Court issued an opinion finding that Plaintiff had proven by a preponderance of the evidence that UPS misclassified 42 specific entries of merchandise under subheading 8473.30.9000 of the Harmonized Tariff Schedule of the United States ("HTSUS"). UPS IV, 558 F. Supp. 2d at 1349. The Court further found that, under the circumstances proven at trial, the misclassifications constituted a failure by UPS to comply with 19 U.S.C. § 1641(b)(4). See UPS IV, 558 F. Supp. 2d at 1352-54.

Section 1641(b)(4) states in full that "[a] customs broker shall exercise responsible supervision and control over the customs business that it conducts." 19 U.S.C. § 1641(b)(4) (2000).

Core to this holding was this Court's interpretation of 19 C.F.R. § 111.1, the Customs regulation which defines the term "responsible supervision and control" as it appears in § 1641(b)(4). The operative definition is given as follows:

> "Responsible supervision and control" means that degree of supervision and control necessary to ensure the proper transaction of the customs business of a broker, including actions necessary to ensure that an employee of a broker provides substantially the same quality of service in handling customs transactions that the broker is required to provide.

19 C.F.R. § 111.1 (2000). Describing how that definition will be employed by Customs, the regulation states that "the determination . . . will vary depending upon the circumstances in each instance," and "factors which Customs will consider include, but are not limited to" a list of ten factors specifically set forth:

> [1.] The training required of employees of the broker; [2.] the issuance of written instructions and guidelines to employees of the broker; [3.] the volume and type of business of the broker; [4.] the reject rate for the various customs transactions; [5.] the maintenance of current editions of the Customs Regulations, the Harmonized Tariff Schedule of the United States, and Customs issuances; [6.] the availability of an individually licensed broker for necessary consultation with employees of the broker; [7.] the frequency of supervisory visits of an individually licensed broker to another office of the broker that does not have a resident individually licensed broker; [8.] the frequency of audits and reviews by an individually licensed broker of the customs transactions handled by employees of the broker; [9.] the extent to which the individually licensed

broker who qualifies the district permit is involved in the operation of the brokerage; and [10.] any circumstance which indicates that an individually licensed broker has a real interest in the operations of a broker.

Id.

The trial Court held that the language of § 111.1 stating that Customs "will consider" the ten factors did not mandate that Customs weigh each and every one of the ten factors in every case, but rather permitted Customs to "consider the listed factors in section 111.1 or look beyond the factors and consider the totality of the circumstances, on a case-by-case basis as it did in this matter." UPS IV, 558 F. Supp. 2d at 1353. In accordance with this interpretation of the broker regulation, the Court found UPS liable for failure to exercise responsible supervision and control of its customs business without discussing the proof regarding Customs' consideration of the ten factors, focusing instead on the operative definition of responsible supervision and control given by § 111.1. Id. at 1352-54. The Court then upheld the amount of fines sought by Plaintiff, entering judgment for Plaintiff and against Defendant in the amount of $75,000. Id. at 1356.

### B. Appeal

UPS appealed and the Court of Appeals affirmed in part, vacated in part, and remanded in part. The Court of Appeals affirmed the Court's holding that UPS had misclassified the entries at issue. UPS V, 575 F.3d at 1381. However, the Court of Appeals held that the term "will" in the phrase "will consider" of 19 C.F.R. § 111.1 "is a

mandatory term," and thus "any interpretation of § 111.1 that does not require consideration of the listed factors is clearly inconsistent with the plain language of the regulation." Id. at 1382. As a result, the Court of Appeals stated that Customs has an "obligation under the regulation to consider at the least the ten listed factors." Id. (emphasis in original). Reviewing the record, the Court of Appeals stated: "[W]e do not see where all ten factors were even mentioned in the testimony. Additionally, where specific factors are discussed in the testimony, it is difficult to determine if those factors were actually considered by Customs." Id. at 1383. The Court of Appeals then stated that "[b]ecause Customs did not consider all ten factors listed in 19 C.F.R. § 111.1, its determination that UPS violated 19 U.S.C. § 1641 was improper." Id. For these reasons, the Court of Appeals stated, "we vacate that portion of the Court of International Trade's judgment and remand for further proceedings." Id. Finally, the Court of Appeals declined to reach the parties' appellate contentions about whether there were multiple violations of the broker statute and whether Customs could impose penalties of more than $30,000 in the aggregate, and vacated "those portions of the Court of International Trade's judgment addressing these issues[.]" Id.

II.     **Meaning and Effect of Court of Appeals' Opinion**

        A.     **Question on Remand**

        The Court of Appeals' holding that vacated the judgment in part was stated as follows:

> Because the Court of International Trade erred in upholding
> [Customs'] determination that UPS did not exercise responsible
> supervision and control in violation of 19 U.S.C. § 1641, we
> vacate that portion of the court's judgment and remand for
> further proceedings.

Id. at 1378. More specifically, the Court of Appeals explained:

> Because Customs did not consider all ten factors listed in 19
> C.F.R. § 111.1, its determination that UPS violated 19 U.S.C.
> § 1641 was improper. Accordingly, we vacate that portion of
> the Court of International Trade's judgment and remand for
> further proceedings.

Id. at 1383.[3] The Court of Appeals thus made plain that two errors occurred below.

Customs' error was failing to consider all ten factors when determining that UPS failed

to exercise responsible supervision and control; this Court's error was in upholding

Customs' determination despite Plaintiff's failure to prove that Customs had considered

the ten factors. See id.

When the Court of Appeals identifies an error and remands for further

proceedings, the lower court must determine "what the appellate court's mandate left

for the district court to do." Exxon Chemical Patents, Inc. v. Lubrizol Corp., 137 F.3d

1475, 1482 (Fed. Cir. 1998). Since the Court's error consisted of upholding Customs'

determination despite Customs' flawed consideration of 19 C.F.R. § 111.1 in making that

determination, the specific question here is: what impact does Customs' failure to

---

[3] Section 111.1 of Title 19, Code of Federal Regulations ("the broker regulation")
defines the term "responsible supervision and control" found at 19 U.S.C. § 1641(b)(4),
and lists ten specific factors that Customs "will consider" in deciding whether a broker
has exercised responsible supervision and control. The broker regulation and its ten
listed factors are discussed in detail infra.

follow 19 C.F.R. § 111.1 have on Plaintiff's action to recover monetary penalties against

UPS under 28 U.S.C. § 1582(1)?  Put another way, can Customs correct its error and

demonstrate that it should be permitted to recover the penalty under § 1582(1)?  To

answer this question, the Court considers the nature of Plaintiff's cause of action, locates

the flaw noted by the Court of Appeals in Customs' penalty procedure, and examines

the effect of that error on the case.

**B.      Plaintiff's Cause of Action and the Court's Jurisdiction**

Section 1582 of Title 28, United States Code, defines Plaintiff's cause of action and

the jurisdiction of the Court:

> The Court of International Trade shall have exclusive
> jurisdiction of any civil action which arises out of an import
> transaction and which is commenced by the United States—
>       (1) to recover a civil penalty under section 592,
> 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of
> the Tariff Act of 1930[.]

28 U.S.C. § 1582 (2000) (emphasis added).  In such a case, Plaintiff must create an

evidentiary record at trial before the Court, which decides the facts and issues of law de

novo on the basis of that record.[4]  28 U.S.C. § 2640(a)(6) (2000).  The evidence must be

relevant to the Court's inquiry, which is whether or not the United States should be

entitled to recover the imposed penalty.  See Fed. R. Evid. 402.  Plaintiff bears the

burden of proving the case by a preponderance of the evidence.  See St. Paul Fire &

Marine Ins. Co. v. United States, 6 F.3d 763, 769 (Fed. Cir. 1993) (holding that civil

---

[4] See Analysis, § III.1, infra, for a discussion of the appropriate standard of review
for this action.

plaintiffs bear a preponderance of the evidence burden when no statute specifies otherwise). On the most basic level, therefore, the outcome of a § 1582(1) case involving the broker statute hinges on whether the United States has proven, upon the basis of the record it has assembled before the Court, that it is entitled to recover a monetary penalty properly imposed pursuant to the procedure of § 1641(d)(2)(A).

To demonstrate that a penalty has been properly imposed under § 1641(d)(2)(A), Plaintiff must establish both that the broker committed a violation of Customs law as the predicate for the penalty,[5] and that all formal requirements of the procedure for imposing the penalty were properly followed by Customs. See § 2640(a)(6); see also § 1641(d)(2)(A). The Court has no direct jurisdiction to independently impose a penalty for violation of the predicate statute—here, the responsible supervision and control statute at § 1641(b)(4). The Court's statutory role is not to impose penalties on customs brokers, but rather to decide whether to permit recovery of penalties the government has already imposed. See 28 U.S.C. § 1582(1). Therefore, the Court's determination regarding the predicate infraction does not in and of itself suffice to permit Plaintiff to recover the penalty. The Court decides whether Defendant violated the predicate statute only insofar as violation of the statute is a crucial component of the penalty

---

[5] Customs is only statutorily authorized to initiate a § 1641(d)(2)(A) penalty proceeding where the broker, in relevant part, "has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision." 19 U.S.C. § 1641(d)(1)(C).

procedure of § 1641(d)(2)(A).  Plaintiff must still demonstrate that all other formal

requirements of the procedure were properly followed, where they are in dispute.

###      C.      Customs' Error

Customs' error—its failure to consider all ten § 111.1 factors when determining

whether to impose the monetary penalties—occurred during the § 1641(d)(2)(A) penalty

process.  To properly determine whether the Court may permit recovery of the

monetary penalties at issue, the Court must first examine the penalty process, ascertain

where Customs deviated from the process, and determine whether Customs can correct

its error.

Although the Court presumes that the parties are fully familiar with the

§ 1641(d)(2)(A) process, this appears to be the first recovery action for monetary

penalties issued under § 1641(d)(2)(A) that has gone to trial,[6] and a discussion of the

underlying procedure will thus be useful and help to frame the analysis that follows.

###              1.      The Penalty Procedure Statute and Regulations

Section 1641(d)(2)(A) states, in relevant part:

> [T]he appropriate customs officer shall serve notice in writing
> upon any customs broker to show cause why the broker

---

[6] To the Court's knowledge, the only other suit by the government seeking to recover a monetary penalty issued under § 1641(d)(2)(A) was decided on summary judgment.  See United States v. Ricci, 21 CIT 1145, 985 F. Supp. 125 (1997).  In Lee v. United States, Plaintiff challenged a revocation action that was initially linked to a monetary penalty recovery action, but the government voluntarily dismissed the recovery component of the action before judgment.  See 26 CIT 384, 387 n.4; 196 F. Supp. 2d 1351, 1356 n.4 (2002).

> should not be subject to a monetary penalty . . . . The notice shall advise the customs broker of the allegations or complaints against him and shall explain that the broker has a right to respond . . . . Before imposing a monetary penalty, <u>the customs officer shall consider the allegations or complaints and any timely response made by the customs broker and issue a written decision</u>. A customs broker against whom a monetary penalty has been issued under this section shall have a reasonable opportunity under [19 U.S.C. § 1618] to make representations seeking remission or mitigation of the monetary penalty. [After any § 1618 proceeding], the appropriate customs officer shall provide to the customs broker a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based.

19 U.S.C. § 1614(d)(2)(A) (emphasis added). This process is further defined in Customs' broker regulations at 19 C.F.R. Part 111, and in the fines, penalties, and forfeitures regulations at 19 C.F.R. Part 171.

2.    Allegations or Complaints and Predicate Offense

The penalty process begins with "allegations or complaints" against a broker. § 1641(d)(2)(A). Customs is authorized to initiate penalty actions when a broker "has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision." § 1641(d)(1)(C); see also 19 C.F.R. §§ 111.53(c) (setting forth grounds for suspension or revocation of a broker's license), 111.91(a) (permitting monetary penalty where no license suspension or revocation is sought). Violations of the responsible supervision and control requirement in § 1641(b)(4) (a law enforced by Customs) can therefore serve as the predicate for a penalty action.

   3.  <u>Prepenalty Notice and Broker Response</u>

 The "appropriate customs officer" then issues to the broker a "prepenalty notice" that must include two things: notice to the broker of the allegations or complaints, and notice to the broker of its opportunity to respond to the allegations or complaints.  19 U.S.C. § 1641(d)(2)(A); 19 C.F.R. §§ 111.92 (providing for pre-penalty notice and time to respond), 111.93 (providing for broker response in form of petition for relief under 19 C.F.R. Chapter 171).  The broker's response must be filed with the Fines, Penalties, and Forfeitures Officer ("FP&F Officer") for the relevant port.  19 C.F.R. § 111.94 (setting forth how Customs will decide whether to impose a penalty and notify broker of results); § 171.12(a) (indicating petition to be filed with relevant FP&F Officer).

 The contents of the prepenalty notice being only allegations or complaints, the customs broker plainly has not yet been subjected to imposition of a monetary penalty upon receiving the prepenalty notice.  § 1641(d)(2)(A); 19 C.F.R. § 111.94.

   4.  <u>Consideration of Allegations and Response</u>

 Upon expiration of the deadline for the broker's response, "the customs officer shall consider the allegations or complaints and any timely response made by the customs broker" before issuing a decision.  § 1641(d)(2)(A).  Customs regulations mandate that, "[i]f it is definitely determined that the act or omission forming the basis of a penalty . . . did not in fact occur, the claim shall be canceled by the Fines, Penalties, and Forfeitures Officer."  19 C.F.R. § 171.31.  <u>See also</u> 19 C.F.R. § 111.94 (indicating that the FP&F Officer will ultimately issue the written decision in a § 1641(d)(2)(A) case).

This is the step of the penalty procedure at which Customs committed the error noted in the Court of Appeals' opinion. In penalty cases like the one underlying this suit, initiated by allegations or complaints that a broker violated the responsible supervision and control requirement of § 1641(b)(4), Customs necessarily must "consider" whether or not the broker exercised responsible supervision and control. See § 1641(d)(2)(A), 19 C.F.R. §§ 111.1, 111.94, UPS V, 575 F.3d at 1383. It can therefore be deduced that the decision maker responsible for considering the allegations and the broker response—the FP&F Officer—is bound by any applicable Customs regulations, including the operative definition of responsible supervision and control, as well as the ten mandatory factors which 19 C.F.R. § 111.1 indicates that Customs "will consider."[7] Because the Court of Appeals based its decision on the failure of Customs to consider all ten factors in reaching its determination, Customs' error was committed by the FP&F Officer when that officer considered the allegations against UPS, along with UPS's responses, without considering each of the ten factors of § 111.1.

> 5.    Written Decision

The broker statute requires that Customs, after considering the allegations and the broker's response, issue a "written decision" to the broker. § 1641(d)(2)(A).

---

[7] Of course, this applies equally to the customs officer who formulates the allegations or complaints that initiate the monetary penalty process; however, because that officer's actions only initiate the penalty process and do not determine its outcome, the legally operative and therefore relevant consideration of the ten factors is that carried out by the penalty procedure decision maker. See 19 U.S.C. § 1641(d)(2)(A), 19 C.F.R. §§ 111.94, 171.31.

Customs regulations add a requirement that "the petitioner will be provided with a

written statement setting forth the decisions on the matter and the findings of fact and

conclusions of law upon which the decision is based."  19 C.F.R. § 171.31a; accord 19

C.F.R. § 111.94.  The written decision is issued by the FP&F Officer.  19 C.F.R. § 111.94.

The Court of Appeals' decision in UPS V strongly implies that Customs must describe

in its written decision the consideration given to each of the ten § 111.1 factors.  See 575

F.3d at 1382 (stating that, where one factor is irrelevant, "Customs can simply explain

that a particular factor does not apply and move on from there.").  This requirement is

also arguably contained in 19 C.F.R. § 171.31a, since consideration of the ten factors

requires Customs to analyze facts and conclude whether those facts constitute a

violation of the law.

<blockquote>6.      Broker's Opportunity to Request Remission or Mitigation</blockquote>

Finally, the broker must be given an opportunity to seek discretionary relief from

Customs in the form of remission or mitigation of the penalty.  § 1641(d)(2)(A).

Pursuant to the broker statute, the remission or mitigation process is governed by

19 U.S.C. § 1618 and its implementing regulations at 19 C.F.R. Part 171.[8]  Id.; 19 C.F.R.

§ 111.95.  After consideration of the broker's petition, the FP&F Officer issues a final

---

[8] The Customs regulations in Part 171 set forth a single petition procedure that governs both (a) a prepenalty response, and Customs' decision as to whether to impose a penalty, as well as (b) a request for discretionary remission or mitigation of a penalty already imposed, and Customs' decision of that petition.

written decision containing the findings of fact and conclusions of law upon which the decision is based.  19 C.F.R. § 111.95; 19 C.F.R. 171.31a.

> 7.      Appeal and Recovery in Court

The broker statute provides the broker with no direct route to judicial review of an imposed fine.  Compare § 1641(d)(2)(A) (making no provisions for direct judicial appeal of imposition of a monetary penalty) with § 1641(d)(2)(B) (detailing penalty procedures including development of a formal record before an administrative law judge and the right to cross-examination) and § 1641(e) (permitting limited judicial review upon appeal when Customs denies, suspends, or revokes a broker's license, or imposes a monetary penalty in lieu thereof, but not when Customs imposes a monetary penalty under § 1641(d)(2)(A)).

On the other hand, the broker regulation provides that, when a monetary penalty is not timely paid by the broker, "Customs will refer the matter to the Department of Justice for institution of appropriate judicial proceedings."  19 C.F.R. § 111.94.  Although not specified, the reference to "appropriate judicial proceedings" in the regulations apparently anticipates the filing of a recovery action under 28 U.S.C. § 1582(1), such as the case at bar.

## D.      This Court's Error

The error that the Court of Appeals noted on the part of the trial Court was that the trial Court "up[held Customs'] determination" and permitted recovery of a civil

penalty under § 1582(1) despite a flaw in the § 1641(d)(2)(A) procedure used to impose that penalty. UPS V, 575 F.3d at 1378.

This Court wrongly resolved a dispute between the parties regarding the elements Plaintiff was required to prove to establish entitlement to recover its penalties. Defendant insisted that one required element of Plaintiff's case was a demonstration that Customs had considered all ten factors of responsible supervision and control set out at 19 C.F.R. § 111.1, while Plaintiff maintained that it did not have to prove consideration of the ten factors. (Dkt. No. 95: Response to Court's Request/Order Dated 11/7/07 ("Pretrial Letter Response"), A-1–A-2, B-2–B-3.) If Defendant's position had prevailed, Plaintiff would have been required to prove that it had considered all ten factors in or to establish that Customs, through the appropriate decision maker, the FP&F Officer, had fully complied with the monetary penalty procedure in § 1641(d)(2)(A) and was entitled to recovery. When UPS raised this issue in the context of a § 1582(1) case, the effect was to assert not only that UPS had in fact exercised responsible supervision and control, but also to challenge whether Plaintiff had complied with all of the steps of the penalty procedure. Specifically, Defendant's position constituted a claim that Customs did not properly conduct the "consideration" required by the broker statute and regulations. § 1641(d)(2)(A); 19 C.F.R. §§ 111.94, 171.31.

This Court erroneously rejected UPS's position and held that Plaintiff did not have to prove consideration of all ten factors to demonstrate entitlement to recover the

imposed penalty. See UPS IV, 558 F. Supp. 2d at 1353. This Court's ruling thus expressed the view that the "consideration" step of the § 1641(d)(2)(A) process did not mandate consideration of all ten § 111.1 factors, and that, as a result, there was no defect in Customs' penalty process as alleged by Defendant. Id. This Court therefore focused its attention on whether, to the satisfaction of the Court on the basis of the record assembled before it, Defendant had actually committed the predicate violation underlying the penalty procedure, rather than whether Customs had rendered its decision on the allegations in the proper manner. Id.

The Court of Appeals, in determining that Customs was required to consider all ten factors, accepted Defendant's interpretation of the broker regulation, which this Court had rejected. UPS V, 575 F.3d at 1383. In the procedural context of a § 1582(1) case, the Court of Appeals' holding indicated that Plaintiff did not prove it had properly complied with the "consideration" step (and possibly the "written decision" step) of the penalty procedure. See § II.C.4-5, supra. Thus the Court of Appeals' holding did not disturb the Court's substantive finding that UPS committed the predicate violation upon which the penalty procedure was based; instead, the Court of Appeals held that the Court erred in rejecting Defendant's challenge to the procedure by which the penalty was imposed. By analogy, the defect noted by the Court of Appeals was comparable to the defect that would exist if Customs failed to provide the broker an opportunity to respond to the prepenalty notice, or if Customs failed to make the mitigation procedure available to Defendant. In the presence of such procedural

defects, the Court could not permit Plaintiff to recover the imposed penalties regardless of whether the broker had committed the underlying violation of Customs law.  See, e.g., United States v. Chow, 17 C.I.T. 1372, 1376-77, 841 F. Supp. 1286, 1289-90 (1993) (dismissing government suit to recover a monetary penalty imposed under analogous statute 19 U.S.C. § 1592, where Customs provided importer only seven days for response but regulation required 30 days); see also United States v. Gold Mountain Coffee, Ltd., 8 C.I.T. 247, 251-52, 597 F. Supp. 510, 516 (1984) (noting that Court will not uphold seizure of merchandise as security for payment of monetary penalty issued under § 1592 where government cannot show certain conditions of § 1592(c)(5) were "satisfied during the process of obtaining the arrest warrant").

### ANALYSIS

Having determined that the Court of Appeals' opinion noted a defect in Customs' compliance with the penalty procedure of § 1641(d)(2)(A), the Court now arrives at the central issue on remand:  whether Plaintiff can correct the defect and prove its entitlement to recover the penalties at issue.

At a conference held on November 5, 2009, the Court heard the positions of the parties on what steps to take in response to the Court of Appeals' decision, and asked the parties to brief the following questions: (1) whether the Court should dismiss the case in light of the Court of Appeals' vacatur of the liability and penalty findings as a simple case in which Plaintiff failed to meet the burden of proof; (2) whether the Court should remand the case to Customs and, if so, what issues Customs should be

instructed to address; and (3) whether the Court should grant the government's request, made during the November 5, 2009 conference, to reopen proceedings and allow the government to present additional testimony from Ms. Lydia Goldsmith.[9] (Dkt. No. 121: Joint Letter of the Parties of November 9, 2009.)  The Parties set forth their positions in briefs filed on November 20, 2009.  (See Dkt. No. 123: Def.'s Post-Remand Brief; Dkt. No. 124: Pl.'s Post-Remand Brief.)

After considering the positions of the parties and applicable law, the Court finds that Plaintiff failed to prove that the relevant Customs FP&F Officer properly considered the ten factors of § 111.1 when imposing the penalties at issue on UPS. Plaintiff has not established grounds for a rehearing and thus will not be given another opportunity to prove what it failed to prove at trial—consideration of the § 111.1 factors.  Moreover, Plaintiff has not offered to present additional evidence that could establish that the FP&F Officer considered the ten factors.  As to remand, the Court is authorized by 28 U.S.C. § 2640(a)(6) to decide the issues in this case at a trial de novo, so remand is not required.  Discretionary remand under 28 U.S.C. § 2643 is inappropriate since the Court is tasked with deciding the case upon the record established before it. Furthermore, discretionary remand to Plaintiff would also permit the party bearing the burden of proof to create, after the conclusion of the trial, the factual prerequisites for

---

[9] Ms. Goldsmith, Supervisory Import Specialist and Trade Enforcement Coordinator at the Customs Area Port of Cleveland, Ohio, was the government's principal witness at trial on the issue of responsible supervision and control.

recovery. This would improperly render Plaintiff's burden of proof meaningless.

Plaintiff having failed to prove entitlement to recover the penalties at issue by a

preponderance of the evidence at trial, judgment will be entered for Defendant.

**I.**     **Plaintiff Did Not Establish at Trial That the Appropriate Customs Officer Considered the Ten Factors**

As already discussed, the "appropriate customs officer" to consider the ten

factors is the FP&F Officer of the relevant port. The record here establishes that Mr.

Bert Webster was that officer. According to Ms. Goldsmith, "I determined that there

should be penalties, but I don't make the final decision," because Mr. Webster had to

agree with her. (Tr. 928.) FP&F Officer Webster was "the one that has discretion, and

he is the one that decides to issue" the prepenalty notices. (Tr. 982-83.) Mr. Webster's

discretion extended to deciding whether to bundle numerous misclassified entries

together into a single penalty notice, so Ms. Goldsmith "didn't know how many pre-

penalty notices would end up being issued." (Tr. 1018.) Mr. Webster or his deputy also

issued the written decisions, penalty statements, and penalty notices imposing

monetary penalties upon UPS. See Tr. Ex. 66, 68, 70, 72, and 74. From this record, the

Court finds by a preponderance of the evidence that Mr. Webster was the appropriate

Customs officer responsible for conducting the consideration required by

§ 1641(d)(2)(A) and § 111.1.

Plaintiff introduced no evidence whatsoever at trial to establish whether the

FP&F Officer considered the ten § 111.1 factors. Plaintiff did not call Mr. Webster to

testify.  Although Mr. Webster's written decisions, penalty statements, and penalty

notices in the penalty cases against UPS were introduced as trial exhibits,[10] the ten

§ 111.1 factors are not discussed anywhere in those exhibits.[11]  There is no other relevant

evidence in the trial record.  Consequently, the Court finds that Plaintiff did not

establish at trial that the appropriate Customs officer considered the § 111.1 factors

when deciding whether to impose penalties upon UPS.

## II.     Further Evidentiary Proceedings Are Inappropriate and Not Mandated by the Court of Appeals' Opinion

Having found that Plaintiff did not prove consideration of the § 111.1 factors, the

Court now examines whether Plaintiff can correct this defect.  First, the Court considers

whether Plaintiff should be permitted to supplement the record with additional

evidence to establish that Customs considered all ten of the factors.  The United States

Code permits the Court to retry or rehear a case in certain circumstances:

> If the Court of International Trade is unable to determine the
> correct decision on the basis of the evidence presented in any
> civil action, the court may order a retrial or rehearing for all

---

[10] Tr. Ex. 66 (written decision, penalty statement, and penalty notice in case 2000-4196-300221); Tr. Ex. 68 (written decision, penalty statement, and penalty notice in case 2000-4196-300222); Tr. Ex. 70 (penalty statement and penalty notice in case 2000-4196-300223) (Plaintiff does not appear to have entered into evidence the written decision in this penalty case); Tr. Ex. 72 (written decision, penalty statement, and penalty notice in case 2000-4196-300319); and Tr. Ex. 74 (written decision, penalty statement, and penalty notice in case 2000-4196-300320).

[11] As mentioned previously, such a discussion is probably required by the Court of Appeals' decision and the regulatory mandate that the written decision state the findings of fact and conclusions of law upon which it is based.  See 575 F.3d at 1382; 19 C.F.R. § 171.31a.

> purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision.

28 U.S.C. § 2643(b).  Retrial or rehearing may be appropriate where

> there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available, even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case.  In short, a rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding.

Oak Laminates Div. of Oak Materials Group v. United States, 8 CIT 300, 302, 601 F.

Supp. 1031, 1033 (1984) (quoting W.J. Byrnes & Co. v. United States, 68 Cust. Ct. 358,

358 (1972)).  "The purpose of a rehearing is not to relitigate."  Arthur J. Humphreys, Inc.

v. United States, 973 F.2d 1554, 1560 (Fed. Cir. 1992) (citing Belfont Sales Corp. v. United

States, 12 CIT 916, 917, 698 F. Supp. 916, 918 (1988), aff'd, 878 F.2d 1413 (Fed. Cir. 1989)).

When a party moves for rehearing, that motion is "addressed to the sound discretion of

the trial court." Id. (citation omitted); see also Oak Materials Group, 8 CIT at 302, 601 F.

Supp at 1033.

### A.    Positions of the Parties

#### 1.    Plaintiff's Position

Plaintiff supports its argument that the Court should hold further evidentiary

proceedings on two grounds.

First, Plaintiff asserts that "dismissal would violate the [Court of Appeals]'s express mandate and improperly grant [UPS] the appellate relief that the [Court of Appeals] denied it." (Pl.'s Post-Remand Brief at 1.) In Plaintiff's view, "the mandate requires this Court to conduct further proceedings on liability in light of the new interpretation of section 111.1 announced by the [Court of Appeals] for the first time." (Id. at 3.) Plaintiff stresses that the Court of Appeals "affirmed" the post-trial judgment in part and declined to reach the damages issues "now" because doing so would be "premature." (Id. at 2 (citing 575 F.3d at 1381, 1383).) The government theorizes that, in characterizing the damages issues as "premature" instead of "permanently foreclosed by an alleged failure of proof," and declining to decide those issues "now," instead of declining to decide them "forever," the Court of Appeals required the introduction of further evidence to reestablish liability. (Id.) The Court of Appeals "would have reversed the judgment with instructions to dismiss" if UPS had fully prevailed on appeal. (Id. at 2-3 (citing Exxon Chem. Patents, Inc. v. Lubrizol Corp., 137 F.3d 1475, 1483 (Fed. Cir. 1998).) Refusing to take further evidence would therefore require the Court to:

> (1) interpret as wholly inoperative . . . the Federal's Circuit's decision affirming this Court's judgment regarding classification . . . (2) substitute the [Court of Appeals]'s use of the word "vacated" in its decision with "reversed"; (3) delete the words "additional proceedings" from the [Court of Appeals]'s mandate; and (4) ignore the [Court of Appeals]'s explicit ruling that all damages issues are premature and hold instead that they are permanently foreclosed in this case due to a supposed failure of proof.

(Id. at 4.)

Second, Plaintiff urges the Court to reopen trial because "the [Court of Appeals]'s decision represents a[] . . . change in . . . the proper interpretation of 19 C.F.R. § 111.1," id. at 6, and the government "should be provided an opportunity to establish that UPS violated 19 U.S.C. § 1641 under the correct legal standard announced by the [Court of Appeals]," id. at 8.  Plaintiff seeks to "demonstrate to this Court that [Customs] considered each factor in its penalty determination" and "establish that Customs did comply with its regulation, even though we did not include this demonstration in our case-in-chief at trial."  (Id. at 8, 10.)  Consideration of all ten factors would be established by presenting "additional testimony from Ms. Goldsmith that would expand and explicate her earlier trial testimony" and "establish that [Customs] actually did consider each factor in section 111.1[.]" (Id. at 9-10.)  Plaintiff claims it "did not perceive, at the time [of trial], a need to establish that [Customs] had considered all ten factors as part of our case in chief," id. at 8, and that "[h]ad we been apprised of the correct interpretation of section 111.1 before August 2009, we would have made this showing at trial," id. at 12.

2.     Defendant's Position

Defendant opposes further evidentiary proceedings, arguing that the Court is barred from taking further testimony by the standard of review in 5 U.S.C. § 706.  (Id. at 7-8.)  UPS interprets the Court of Appeals' opinion to foreclose the government from

presenting the Court with evidence that Customs did, in fact, consider all ten of the

§ 111.1 factors, because "the court of appeals unequivocally held that 'Customs <u>did not</u>

consider all ten factors listed in 19 C.F.R. § 111.1.'" (<u>Id.</u> at 11 (<u>quoting</u> UPS V, 575 F.3d at

1383) (emphasis added by Defendant).)  According to UPS, permitting the government

to introduce new evidence before the Court would give Plaintiff the ability to justify its

imposition of a monetary penalty in circumvention of UPS's right to be heard at the

agency level under a correct application of the law.  (<u>Id.</u> at 11-14.)

### B.      Plaintiff Has Not Shown Grounds to Reopen the Trial

Here, a rehearing would not serve to correct "a significant flaw in the conduct of

the original proceeding" arising from some "irregularity in the trial"; a "serious

evidentiary flaw"; the "discovery of important new evidence which was not available,

even to the diligent party, at the time of trial"; or an "accident," "unpredictable

surprise," or "unavoidable mistake" that "severely impaired a party's ability to

adequately present its case."  <u>See</u> <u>Oak Laminates Division.</u>, 601 F. Supp. at 1033.  For

example, this Court's erroneous interpretation of § 111.1 did not lead the Court to

preclude Plaintiff from entering evidence needed to establish that Customs considered

all ten factors; Plaintiff was free to offer that evidence, but never did so.

Plaintiff makes no claim that Ms. Goldsmith's proposed additional testimony

was unavailable at the time of trial, or could not be presented due to some accident,

surprise, or unavoidable mistake.  Even if Plaintiff was surprised by what Ms.

Goldsmith said on cross-examination and realized it had made some mistake in

examining her, Plaintiff still had sufficient opportunity to expand and explicate her testimony on redirect examination, or to request an opportunity to call another witness to testify regarding consideration of the ten factors.

Plaintiff makes none of these claims, instead claiming only that it did not introduce the relevant evidence because it did not believe doing so was necessary. This indicates that a new hearing would improperly allow Plaintiff a chance to relitigate its case to correct what could perhaps best be characterized as a tactical mistake, apparently stemming from Plaintiff's belief that the open § 111.1 issue would be decided in its favor.

The Court of Appeals' announcement of a "new" interpretation of § 111.1 on appeal does not bring the error into the category of a surprise, accident, or mistake deserving a rehearing. The Court of Appeals' interpretation of § 111.1 was "new" only in the sense that the issue had never been addressed by that court before. Despite the novelty of the issue—or, more precisely, <u>because of</u> the novelty of the issue—Plaintiff had ample notice before trial that the Court's ruling on this crucial issue was not a foregone conclusion. This is not a case in which Plaintiff could rely upon a long-established interpretation of the law in planning its trial strategy, but rather a case in which Plaintiff knew well in advance of trial that the success of its case could depend upon establishing evidence to satisfy either of the two potential outcomes on the applicability of the § 111.1 factors. No flaw in the trial prevented Plaintiff from doing

then what it seeks to do now: putting on a witness to testify regarding the consideration given to the ten factors of § 111.1.

The record also reveals that Plaintiff knew, long before trial, that the Court might base its decision of the case in part on a determination that Plaintiff's burden of proof included establishing that Customs had considered all ten § 111.1 factors.[12]  The Court therefore rejects Plaintiff's contention that it did not present at trial evidence relevant to this question—evidence which Plaintiff now says it possessed all along—due to a lack of notice that it might be required to do so.  The Court also rejects Plaintiff's contention that the Court of Appeals' opinion constituted a change in the law regarding 19 C.F.R. § 111.1 and should excuse Plaintiff's failure to prove its case at trial.

More than 15 months before trial, Defendant argued in its memorandum opposing Plaintiff's motion for summary judgment that Plaintiff needed to prove that it had considered all ten § 111.1 factors.  (See Def. SJ Opp. at 4 (Dkt. No. 66).)  UPS contended that the Court should deny the motion because Plaintiff bore the burden of establishing not only that UPS misclassified certain import entries, but also "how these alleged misclassifications, taking into account each factor listed in 19 C.F.R. § 111.1, demonstrates [sic] the failure to exercise responsible supervision and control in violation of 19 U.S.C. § 1641(b)(4)."  (Id. (internal quotations omitted).)  Plaintiff

---

[12] As mentioned earlier, this case appears to be the first case to go to trial in which the United States has sought to recover a monetary penalty for failure to exercise responsible supervision and control.  The question of what elements Plaintiff had to prove to make out its case was therefore a question of first impression.

responded to this argument in detail, indicating that the government understood UPS

to be arguing that the ten factors of § 111.1 were mandatory, and contending that the

factors were inapplicable to this action. (Pl.'s SJ Reply at 6-12 (Dkt. No. 70).) The Court

denied summary judgment on different grounds, but stated that the "Court

acknowledges Defendant's other challenges to Plaintiff's case" and would allow those

challenges to "be taken up at trial," UPS III, 31 CIT at 1028, thus informing Plaintiff that

the issue remained open.

Defendant also argued in the Pretrial Letter Response that it viewed the ten

factors to be an element of Plaintiff's case, serving to notify Plaintiff that it might be

required to present evidence regarding the ten factors at trial. Pretrial Letter Response

at B-1–B-3. UPS characterized § 111.1 as setting forth a "fact-intensive inquiry that

requires Customs, and now the Court, to consider a wide range of factors," including

the ten factors. Id. Although Defendant believed Plaintiff would have to present

evidence on the substance of the ten factors for the Court itself to directly consider, it

also maintained that Customs was required to consider the ten elements as well.[13] Id.

---

[13] The Court does not interpret § 111.1 as requiring the Court to independently consider each of the ten factors of § 111.1 in a case of this type. The Court takes this view because § 111.1 specifically states that the ten factors are factors which Customs "will consider," and that language cannot mandate how the Court will make its own determination. 19 C.F.R. § 111.1. The Court's determination of whether a predicate offense actually occurred to justify the initiation of a § 1641(d)(2)(A) proceeding is distinct, however, from the requirement that Customs prove that it complied with § 1641(d)(2)(A) by considering the ten factors when determining to impose the penalty it seeks to recover. See Background, § II.D, supra.

Plaintiff was thus notified that it might not only have to prove that it considered the ten factors in the deciding the outcome of the penalty proceeding, but also to present evidence regarding the ten factors from which the Court could determine that Defendant failed to exercise responsible supervision and control.

The issue was next addressed in the final Pretrial Order, in which Defendant asserted that Plaintiff's penalty claim "does not satisfy the regulatory factors set forth in the Customs regulations." Pretrial Order, Schedule D-2 ¶ 5. Defendant also included in its list of triable issues the question of "[w]hether . . . misclassification of the entries underlying Plaintiff's Complaint, if proven, amounts to a failure by Defendant to exercise responsible supervision and control in light of the extensive compliance measures taken by Defendant, the volume of its business, the particular HTSUS classification at issue, and the other factors <u>required to be considered</u> in determining whether a broker has exercised responsible supervision and control under 19 U.S.C. § 1641(b)(4). <u>See</u> 19 C.F.R. § 111.1 and 19 C.F.R. Part 171 App. C. § XI." (Pretrial Order, Schedule F-2 ¶ 3 (emphasis added).)

Finally, Defendant argued in its opening statement at trial that Plaintiff was required to introduce evidence about all of the § 111.1 factors. (Tr. 73-74.) Plaintiff did not object or make any argument of its own regarding this assertion. (<u>See</u> Tr. 60-63; 73-74.)

From this record, the Court finds that Plaintiff was well aware before trial and at trial that the Court could rule against it on the issue of whether consideration of all ten factors was an element of its cause of action. The Court further finds that Plaintiff had reason to know that if the Court issued a ruling adverse to Plaintiff on this question, Plaintiff would be required to prove consideration of the ten factors in order to establish Defendant's liability. The United States therefore cannot be excused for failing to put forward in its case-in-chief <u>any</u> evidence that the § 111.1 factors had been considered. This is especially true when Plaintiff now claims that it had evidence all along that Customs actually did consider all ten factors (an argument that Plaintiff, notably, failed to assert at or before trial). The Court finds puzzling Plaintiff's failure to enter evidence purportedly in its possession which was relevant to an issue which it knew could be central to the outcome of the case. Nonetheless, it would be contrary to the purpose of trial and basic principles of finality for the Court to extend Plaintiff an opportunity to do correctly now that which it failed to do before. See <u>Belfont</u>, 698 F. Supp. at 918 (indicating that the purpose of a rehearing is to correct a flaw in the proceeding, not to give a party a chance to "relitigate").

C. **Plaintiff Cannot Cure the Defect with Testimony from Ms. Goldsmith**

From Plaintiff's proposal that Ms. Goldsmith give additional evidence, it appears that Plaintiff fails to apprehend the nature of the defect in its proof. Further testimony by Ms. Goldsmith is irrelevant because Mr. Webster, not Ms. Goldsmith, was the

Customs officer required to consider the ten factors. See 19 U.S.C. § 1641(d)(2)(A); 19

C.F.R. §§ 111.94, 171.31; see also Analysis, § I, supra.

This is revealed in Ms. Goldsmith's testimony. According to Ms. Goldsmith, her

role in the formal penalty proceeding was limited to identifying UPS's misclassified

entries, drafting prepenalty notices, and forwarding the draft notices to Mr. Webster.

Ms. Goldsmith stated, "I determined that there should be penalties, but I don't make the

final decision," because Mr. Webster had to agree with her. (Tr. 928.) Issuing the

prepenalty notices "is left up to the Fine & Penalties Office," and Ms. Goldsmith did not

know if the FP&F Office actually issued the notices that she forwarded. (Tr. 930.)

"[T]he responsibility of the Fines & Penalties Office" also included obtaining any

necessary higher-level clearances, and Ms. Goldsmith did not know if that was done.

(Tr. 934, 936-37.) Ms. Goldsmith summarized her role in the process as follows: "The

pre-penalty statement is written by the team. They forwarded it to me to review so I

did make changes to the actual pre-penalty statement that they first wrote, and then the

statement with the attachment of the entries is forwarded to FP&F." (Tr. 962-63.) Mr.

Webster was "the one that has discretion, and he is the one that decides to issue" the

prepenalty notices. (Tr. 982-83.) Mr. Webster's discretion extended to deciding whether

to bundle numerous misclassified entries together into a single penalty notice, so Ms.

Goldsmith "didn't know how many pre-penalty notices would end up being issued."

(Tr. 1018.) From this record, the Court finds that Ms. Goldsmith merely formulated

allegations against UPS and forwarded them to Mr. Webster, the relevant FP&F Officer,

who was responsible for considering the allegations and UPS's response. Therefore, further testimony from Ms. Goldsmith, who did not decide the penalty actions, could not reveal whether Mr. Webster considered the ten factors in deciding to impose the penalties at issue.

Even assuming, for the sake of argument, that Ms. Goldsmith's consideration of all ten factors could satisfy Plaintiff's burden of proof, the Court finds that additional testimony that she considered all ten factors would conflict with her prior testimony. Ms. Goldsmith's only testimony regarding the ten factors arose during her cross-examination. In that testimony, Ms. Goldsmith expressed unfamiliarity with the contents of the broker regulation, not realizing at first that the 2000 version of the broker regulation (which was amended effective April 14, 2000) applied during the penalty proceedings, and testifying that she was using the prior version of the broker regulations when she met to discuss the penalty cases with Mr. Webster in February or March of 2000. (Tr. 971-80.) It appears that Ms. Goldsmith was also unaware that those prior regulations provided a definition of responsible supervision and control. (Tr. 976-77.)[14]

---

[14] With regard to the definition of responsible supervision and control, the amendment of the broker regulation which went into effect on April 14, 2000 merely relocated a previously-existing similar definition from § 111.11(d) to § 111.1 and amended some of the specific factors to be considered by Customs. See 51 Fed. Reg. 30,336, 30,337-38 (Aug. 26, 1986) (publishing final rule containing initial definition of responsible supervision and control in § 111.11(d)); 64 Fed. Reg. 22,726, 22,728 (Apr. 27, 1999) (proposing rule change consisting of modification of § 111.11(d) and moving the

(continued...)

Defense counsel asked Ms. Goldsmith about seven of the ten factors in particular. (Tr. 984-92.) The Court finds, from Ms. Goldsmith's responses, that it is unclear whether she considered the § 111.1 factors of supervisory visit frequency ("I did not look at it, but we did consider it," Tr. 990); internal audit frequency ("[t]hat is a consideration, yes," but she "wasn't familiar with all of [UPS's audits] at the time" and did not look at UPS's audits at "that particular moment," Tr. 990-91); and the extent of involvement in operations by the broker qualifying the district permit ("Yes. I mean, that is a consideration. That is one of the items that are [sic] listed," but she did not find a deficiency there and "wasn't really looking at those areas," Tr. 991). Three other § 111.1 factors—employee training by the broker, issuance of instructions and guidelines to employees by the broker, and the licensed broker's real interest in brokerage operations—were never mentioned during Ms. Goldsmith's testimony. The Court therefore finds that additional testimony by Ms. Goldsmith that she actually considered all ten factors would be inconsistent with her prior testimony.

### D.    The Court of Appeals Did Not Mandate Evidentiary Proceedings

Contrary to Plaintiff's interpretation, the mandate of the Court of Appeals requires only that this Court conduct "further proceedings" and nowhere specifies the form or content required of such proceedings. Plaintiff argues that the Court of

---

[14](...continued)
modified subdivision to § 111.1); 65 Fed. Reg. 13,880, 13,891-92 (adopting final rule with modified definition of responsible supervision and control at § 111.1, effective April 14, 2000).

Appeals meant to require "further proceedings on liability in light of the new interpretation of section 111.1 announced by the [Court of Appeals] for the first time," Pl.'s Post-Remand Brief at 1-2, but does not cite any authority for that interpretation of the Court of Appeals' plain statement that "we . . . remand for further proceedings," UPS V, 575 F.3d at 1383.

The general rule is that "[f]ollowing appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the [appeals] court and the [appeals] court's written opinion." Exxon Chem. Patents, Inc., 137 F.3d at 1484. Contrary to Plaintiff's insistence that the Court of Appeals would have ordered dismissal if it found Plaintiff's case fatally flawed, there are "many circumstances" in which it would be error for an appeals court to order dismissal or direct entry of a final judgment for defendant below when plaintiff's verdict is set aside on appeal. See id., 137 F.3d at 1480 (citing Neely v. Martin K. Eby Constr. Co., 386 U.S. 317, 326 (1967). The lower court is not to assume that the appeals court has ordered a particular outcome unless the appeals court states that order explicitly. See id. at 1481. When an appellate judgment issues, that judgment always vests jurisdiction in the district court to conduct "further proceedings," which "may be purely ministerial, as when a judgment for the plaintiff is reversed and the only matters that remain for the district court are to dismiss the complaint and enter the judgment in the docket," but may also be "more significant." Id. at 1483.

Exxon indicates that the nature of the "further proceedings" mandated by the Court of Appeals here can be any proceedings consistent with the formal judgment of the Court of Appeals (affirmed in part, vacated in part, remanded in part) and the contents of its opinion. In accordance with Exxon, the Court here has conducted a conference with the parties and allowed them to brief their positions regarding the correct course to take. As already explained in detail above, the Court has determined that Plaintiff cannot correct the defect in its case through a hearing to take new evidence. This determination stems directly from the nature of the proof required in a § 1582(1) case and the impact of the Court of Appeals' opinion in the context of this particular type of proceeding. The Court therefore finds that the mandate of the Court of Appeals does not require further evidentiary proceedings here.

## III.      Remand to Customs for Further Proceedings

Defendant asserts that the Court must remand this case to Customs for further administrative proceedings, to be conducted in accordance with the Court of Appeals' opinion. The Court determines that the issues to be decided do not require remand to Customs, and that it would be inappropriate to exercise the Court's discretionary remand power in view of the de novo nature of the action and Plaintiff's burden of proof.

### A.      Positions of the Parties

Defendant states that "[a]lthough UPS had initially suggested that this Court dismiss the action . . . UPS has determined that the proper course is to remand to the

agency for further proceedings." (Def.'s Post-Remand Brief at 3.) UPS urges the Court

to remand to Customs because "the Supreme Court and [Court of Appeals] have

unequivocally and repeatedly held that, if any agency makes an error of law, the court

must remand to the agency so that it can correct its error and apply the proper legal

standard." Id. at 3-7 (citing numerous cases in which the Supreme Court and courts of

appeals have mandated remand to the agency under the "settled principle of

administrative law that '[w]hen an administrative agency has made an error of law, the

duty of the Court is to correct the error of law committed by that body, and, after doing

so to remand the case to the [agency] so as to afford it the opportunity of examining the

evidence and finding the facts as required by law.'") (quoting Int'l Light Metals v.

United States, 279 F.3d 999, 1003 (Fed. Cir. 2002), which in turn quotes from NLRB v.

Enter. Ass'n of Steam, 429 U.S. 507, 522 n.9 (1977), and citing numerous other cases[15]).

---

[15] Florida Power & Light Co. v. Lorion, 470 U.S. 729 (1985); Nat'l Ass'n of
Greeting Card Publrs. v. USPS, 462 U.S. 810 (1983); Reilly v. OPM, 571 F.3d 1372 (Fed.
Cir 2009); Ad Hoc Shrimp Trade Action Comm. v. United States, 515 F.3d 1372 (Fed.
Cir. 2008); In re Reuning, 276 F. App'x 983 (Fed. Cir. 2008); Folio v. Dep't of Homeland
Sec., 402 F.3d 1350 (Fed. Cir. 2005); Whittington v. Merit Sys. Prot. Bd., 80 F.3d 471 (Fed.
Cir. 1996); Waldau v. Merit Sys. Prot. Bd., 19 F.3d 1395 (Fed. Cir. 1994); Trent Tube Div.,
Crucible Materials Corp. v. Avesta Sandvik Tube AB, 975 F.2d 807 (Fed. Cir. 1992);
Kline v. Dep't of Transp., Fed. Aviation Admin., 808 F.2d 43 (Fed. Cir. 1986); Casteneda-
Castillo v. Gonzales, 488 F.3d 17 (1st Cir. 2007); Soltane v. DOJ, 381 F.3d 143 (3d Cir.
2004); Coal. for Gov't Procurement v. Fed. Prison Indus., 365 F.3d 435 (6th Cir. 2004)
(citing South Prairie Constr. Co. v. Int'l Union of Operating Eng'rs, 425 U.S. 800 (1976);
Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668 (1st Cir. 1998); PPG Indus.,
Inc. v. United States, 52 F.3d 363 (D.C. Cir. 1995); Coteau Props. Co. v. Dep't of Interior,
53 F.3d 1466 (8th Cir. 1995); Tomas v. Rubin, 935 F.2d 1555 (9th Cir. 1991); Pollgreen v.
Morris, 770 F.2d 1536 (11th Cir. 1985); Ommaya v. Nat'l Insts. of Health, 726 F.2d 827

(continued...)

According to Defendant, this Court would commit reversible error by failing to remand the case to Customs for a correct application of § 111.1 in the first instance. Id. at 7 (citing Gonzalez v. Thomas, 547 U.S. 183 (2006) (per curiam) and INS v. Orlando Ventura, 537 U.S. 12 (2002) (per curiam)).

Plaintiff does not oppose a remand to Customs for further proceedings, but states that:

> [a]lthough we are fully prepared to present evidence that [Customs] in fact considered each of the factors . . . we have concluded that an appropriate course of action would be for this Court to remand the entire case to [Customs] and then conduct, following [Customs]'s remand determination, limited judicial proceedings to permit compliance with the [Court of Appeals]'s mandate.

(Pl.'s Post-Remand Brief at 8-9.)

## B.     Remand is Neither Required Nor Appropriate

Whether a remand is required or appropriate in a given lawsuit depends on the nature of the suit and the issues to be decided—e.g., the statutorily-mandated standard of review, the relationship of the parties to each other, whether the United States or one of its agencies is a party to the action, and the statutory authority of an agency party. The Court interprets the standard of review statute at 28 U.S.C. § 2640 as setting forth a de novo standard of review for this case. Remand is not mandatory here because the Court is authorized by statute to determine de novo whether Plaintiff is entitled to

---

[15](...continued)
(D.C. Cir. 1984); and Kamheangpatiyooth v. INS, 597 F.2d 1253 (9th Cir. 1979).

recovery.  As a consequence of the de novo nature of this suit and Plaintiff's burden of

proof, the Court concludes that discretionary remand of this case to Customs would be

inappropriate.

        1.     The Applicable Standard of Review

The Court's standard of review in this case is set forth at 28 U.S.C. § 2640,[16]

entitled "Scope and standard of review," which states in full:

> (a)    The Court of International Trade shall make its
> determinations upon the basis of the record made before the
> court in the following categories of civil actions:
>
> > (1)    Civil actions contesting the denial of a
> > protest under [19 U.S.C. § 1515].
> >
> > (2)    Civil actions commenced under
> > [19 U.S.C. § 1516].
> >
> > (3)    Civil actions commenced to review a
> > final determination made under [19 U.S.C.
> > § 2515(b)(1)].
> >
> > (4)    Civil actions commenced under [19
> > U.S.C. § 1677f(c)(2)].

---

[16] The Court previously addressed the standard of review statute in UPS IV, 558
F. Supp. 2d at 1336 (stating that "[t]he Court reviews a case brought under 19 U.S.C.
§ 1641(d)(2)(A) de novo as to the facts, the law, and the amount of the penalty" in its
post-trial determination) and in UPS I, 30 CIT at 823-25, 442 F. Supp. 2d at 1304-06
(concluding, after review of the statute, that the standards of review at 5 U.S.C.
§§ 706(2)(A) and 706(2)(C) were "relevant in this matter" at summary judgment.)  The
Court's prior articulation that the APA was "relevant in this matter" was incorrect.  As
discussed below, the Court continues to hold that the appropriate standard of review is
de novo.

(5)     Civil actions commenced to review any decision of the Secretary of the Treasury under [19 U.S.C. § 1641], with the exception of decisions under [19 U.S.C. § 1641(d)(2)(B)], which shall be governed by subdivision (d) of this section.

(6)     Civil actions commenced under section 1582 of this title.

(b)     In any civil action commenced in the Court of International Trade under [19 U.S.C. § 1516a] the court <u>shall review the matter</u> as specified in subsection (b) of such section.

(c)     In any civil action commenced in the Court of International Trade to review any final determination of the Secretary of Labor under [19 U.S.C. § 2273] or any final determination of the Secretary of Commerce under [19 U.S.C. § 2341] or [former 19 U.S.C. § 2371], the court <u>shall review the matter</u> as specified in [19 U.S.C. § 2395].

(d)     In any civil action commenced to review any order or decision of the Customs Service under [19 U.S.C. § 1499(b)], the court <u>shall review the action</u> on the basis of the record before the Customs Service at the time of issuing such decision or order.

(e)     In any civil action not specified in this section, the Court of International Trade <u>shall review the matter</u> as provided in section 706 of title 5.

28 U.S.C. § 2640 (2000) (emphasis added).

At first glance, two subdivisions possibly apply to this action: § 2640(a)(5) and

§ 2640(a)(6). Subdivision (a)(5) appears to apply because it specifies "[c]ivil actions

commenced to review any decision of the Secretary of Treasury under [§ 1641], with the

exception of decisions under [§ 1641(d)(2)(B)]," and this case arises to recover a

monetary penalty imposed pursuant to § 1641(d)(2)(A).  Subdivision (a)(6) of § 2640 also appears to apply, because it specifies "[c]ivil actions commenced under [28 U.S.C. § 1582]," and Plaintiff commenced this case under § 1582(1).  After due consideration, the Court is convinced that only § 2640(a)(6) applies to a monetary penalty recovery suit commenced under § 1582(1), for the reasons that follow.

First, the Court notes that § 2640(a)(5) applies to an "action commenced to review" the agency's decision, which implies a challenge to the agency action by an aggrieved party.  This language does not describe the case at bar because the government commenced this case to <u>uphold</u> Customs' action, not to review or challenge it.  The present case is more accurately described by the plain language of § 2640(a)(6) than that of § 2640(a)(5), because the essential question for the Court is whether to permit recovery of penalties under § 1582(1), not whether a broker violated has § 1641 in the first place.   Subdivision (a)(6) describes the present case more specifically, because the broker statute is only before the Court indirectly, as a basis underlying a § 1582(1) suit.  Furthermore, § 1582 provides specifically for suits to recover a fine levied by the United States against a private entity,[17] but the causes of action covered by the

_____

[17] 28 U.S.C. 1582 (applying only to a "civil action which arises out of an import transaction and <u>which is commenced by the United States</u>[.]") (emphasis added).  Each of the statutes referenced in § 1582(1) provides a procedure by which the government may impose a fine.  <u>See</u> 19 U.S.C. § 1592 (penalties for fraud, gross negligence, and negligence by importers); 19 U.S.C. 1593a (penalties for false drawback claims); 19 U.S.C. § 1641(b)(6) (penalties for transacting customs business without a license); 19 U.S.C. § 1641(d)(2)(A) (as discussed throughout this opinion); 19 U.S.C. § 1671c(i)(2)

(continued...)

other subdivisions of § 2640(a) provide for exactly the opposite—suits by private

entities against the United States.[18]  This distinction adds force to the differences

between the plain language of §§ 2640(a)(5) and (a)(6), suggesting that Congress

intended to group suits by the government to recover § 1641(d)(2)(A) monetary

penalties together with similar cases under § 2640(a)(6), while placing under § 2640(a)(5)

cases initiated by private parties challenging government action under the broker

statute.  Moreover, the Court notes that Plaintiff accepts that the Court's review of this

case is governed by the <u>de novo</u> standard of § 2640(a)(6).  (Pl.'s Post-Remand Brief at 9,

12.)  For these reasons, the Court holds that § 2640(a)(6) applies to monetary penalty

recovery suits, rather than § 2640(a)(5).

Drawing this distinction is not merely an academic exercise.  It is true that

subdivisions (a)(5) and (a)(6) both share the operative language of § 2640(a), requiring

the court to "make its determinations upon the basis of the record made before the

---

[17](...continued)
(penalties for violating agreement regarding countervailable subsidies); 19 U.S.C.
§ 1673c(i)(2) (penalties for violating agreement regarding dumping).

[18] <u>See</u> §§ 2640(a)(1) (providing for challenges to the government's denial of a
protest under 19 U.S.C. § 1515); (a)(2) (providing for challenges to the government's
valuation, classification, or duty decision under 19 U.S.C. § 1516); (a)(3) (providing for
challenges to the government's final country of origin rulings under 19 U.S.C. §
2515(b)(1)); (a)(4) (providing for challenges when the government denies access to
proprietary materials); and (a)(5) (providing for "actions commenced to review any
decision" of the government under § 1641 apart from license revocation or suspension
decisions).  <u>Compare</u> (a)(6) (providing for recovery actions "commenced <u>by</u> the United
States" to recover civil penalties, recover upon a bond, or recover duties) (emphasis
added).

court," but, remarkably, that shared language has been construed as requiring something different depending on which subdivision of § 2640(a) applies in a particular case.  Compare ITT Corp. v. United States, 24 F.3d 1384, 1389 (Fed. Cir. 1994) (construing § 2640(a)(1) as requiring "trial de novo") with Bell v. United States, 17 C.I.T. 1220, 1224-25, 839 F. Supp. 874, 878 (1993) (construing § 2640(a)(5) as mandating something more deferential than de novo review by virtue of its interaction with 19 U.S.C. § 1641(e)) and United States v. Ricci, 21 CIT 1145, 985 F. Supp. 125, 126 (1997) (construing § 2640(a)(5) as failing to provide a standard of review altogether).

In Bell, the plaintiff challenged the denial of his broker's license application, arguing that the de novo standard of § 2640(a)(5) applied and was in "fatal conflict" with 19 U.S.C. § 1641(e)(3) (a provision of the broker statute pertaining to certain judicial appeals and mandating that the court uphold Customs' findings of fact if supported by substantial evidence).  839 F. Supp. 874, 878.  Noting that "it is preferable to harmonize apparently conflicting statutes," the Bell court stated that "[i]n license denial cases, 'record made before the court' refers not to the standard of review, but to the scope of information that the court shall ultimately review on appeal," and ruled that the "court will . . . uphold the Secretary's findings and conclusions . . . if they are supported by substantial evidence[.]" Id. at 878-79.  In China Diesel Imports v. United States, the court analyzed Bell as limited to broker's license denial cases, where "peculiar competing statutory provisions [i.e., the judicial appeal provisions of the broker statute at § 1641(e)(3)] . . . weigh[] against ordinary de novo trial."  18 C.I.T. 515,

520, 855 F. Supp. 380, 385 (1994).  The court in China Diesel, however, held that

§ 2640(a) directs trial de novo where "no . . . competing statutory provisions, nor

indications of legislative intent, weigh[] against a trial de novo[.]" Id.

Furthermore, in what appears to be the only other court decision on a monetary

penalty recovery case, the court applied § 2640(a)(5) rather than § 2640(a)(6).  See Ricci,

985 F. Supp. at 126.  The Ricci court stated that § 2640(a) provides only a scope of review

that "is not accompanied by a standard of review," and consequently looked to 5 U.S.C.

§ 706 (the Administrative Procedure Act ("APA")) for a standard to govern

§ 1641(d)(2)(A) monetary penalty recovery suits.  985 F. Supp. at 126.  Ultimately, the

Ricci court applied a de novo standard of review pursuant to 5 U.S.C. § 706(2)(F).  Id.

Thus, the operative language of § 2640(a) has been construed differently in cases

involving § 2640(a)(5) than in cases involving the other subdivisions of § 2640(a), despite

the argument against such a result which arises from the fact that all of the subdivisions

share the same operative language.[19]

---

[19] The Court's review of the relevant case law and statutes convinces the Court
that the purported statutory conflict cited in Bell and China Diesel does not actually
exist, and that license denials should also be governed by an ordinary de novo standard
of review.  The Court is convinced of this interpretation by the language of § 1641(e)(3)
and (4), which references the hearing officer and findings of fact required in a
revocation or suspension proceeding—which are not required when a license or permit
is denied.  Compare § 1641(d)(2)(B) (revocation or suspension procedure) and 19 C.F.R.
§§ 111.67-69 (requirements regarding hearing officer and findings of fact) with § 1641(b)
and (c) (denial grounds) and 19 C.F.R. §§ 111.13(e), 111.16-17, 111.19(e), (g)
(requirements regarding denial of permit of license and administrative appeals
therefrom).

This Court disagrees with <u>Ricci</u>'s statement that the operative language "upon the basis of the record made before the court" in § 2640(a) does not provide a standard of review. The statute's language, in the first place, directs how the Court "shall make its <u>determinations</u>." 19 U.S.C. § 2640(a) (emphasis added). A "determination" is a "final decision by a court," Black's Law Dictionary (9th Ed. 2009), and to "determine" means to "settle or decide (a dispute, question, matter in debate), as a judge or arbiter," Oxford English Dictionary (2d Ed. 1989). In contrast, each of the other subdivisions of § 2640 directs how the Court "shall review" the matter. <u>See</u> § 2640(b)-(e) and Analysis, § III.B.1, <u>supra</u>. A "review" is a "[c]onsideration, inspection, or reexamination of a subject or thing," implying a case in which the Court takes a second look at a matter previously decided. Black's Law Dictionary (9th Ed. 2009). Since § 2640(a) describes the manner in which the Court "shall make its determinations"—or, in other words, "settle or decide" the case in the first instance—the statutory language "upon the basis of the record made before the court" appears to contemplate <u>de novo</u> review by the court and constitute a standard of review.

The language in § 2640(a), while suggestive, is insufficient to decide this question standing alone. Higher courts, however, have also interpreted the phrase "upon the basis of the record made before the court" in § 2640(a) to mandate a <u>de novo</u> standard of review. <u>See</u> <u>United States v. Haggar Apparel Co.</u>, 526 U.S. 380, 391 (1999) (implying that the phrase "make its determinations upon the basis of the record made before the court" in § 2640(a) gives the Court "authority . . . to make factual determinations, and to

apply those determinations to the law, de novo"); see also Park B. Smith, Ltd. v. United

States, 347 F.3d 922, 924 (Fed. Cir. 2003) (stating that the Court "is required to decide, on

a de novo basis, civil actions that contest the denial of a protest to a Customs

classification ruling," and quoting the operative language of § 2640(a)); ITT, 24 F.3d at

1389 (referring to § 2640(a) as "establishing a statutory scheme for review of Customs'

denial of a . . . reliquidation request in a trial de novo before the Court of International

Trade").

Confirming this analysis, the standard and scope of review statute's operative

language has been interpreted to provide a de novo standard of review in cases covered

by the other subdivisions of § 2640(a).  See Park B. Smith, 347 F.3d at 924 (de novo

review of challenge to Customs classification, which falls under § 2640(a)(1)); Amity

Leather Co. v. United States, 20 C.I.T. 1049, 939 F. Supp. 891, 892-93 (1996) (de novo

review of challenge to denied 19 U.S.C. § 1516 petition, which falls under § 2640(a)(2));

Daido Corp. v. United States, 16 C.I.T. 987, 807 F. Supp. 1571, 1577 (1992) (de novo

review of challenge to denied 19 U.S.C. § 1677f(c)(2) request for confidential

information, which falls under § 2640(a)(4)); Allied Tube & Conduit Corp. v. United

States, 13 C.I.T. 698, 721 F. Supp. 305, 309 (1989) (same); United States v. Inn Foods, Inc.,

31 C.I.T. 1474, 515 F. Supp. 2d 1347, 1357 (2007) (de novo review of action to enforce

penalties imposed under 19 U.S.C. § 1592, which falls under § 2640(a)(6)).[20]

_____

[20] It appears that Xerox Corp. v. United States, pending before this Court under

(continued...)

Finally, the legislative history of § 2640 corroborates that Congress intended cases falling under § 2640(a)—all of them—to be governed by a <u>de novo</u> standard of review. The report of the Judiciary Committee of the House of Representatives recommending adoption of § 2640 stated that § 2640(a)(6) "provides for a trial de novo in a civil penalty or collection action commenced pursuant to proposed section 1582" and that "[t]his <u>standard of review</u> is appropriate since the types of actions specified in section 1582 are presently commenced in federal district court, and a trial de novo is conducted in that court." H.R. REP. No. 1235, 96th Cong., 2d Sess. 59 (1980), <u>reprinted in</u> 1980 U.S.C.C.A.N. 3729, 3771 (repeating similar language for § 2640(a)(1)-(a)(5)) (emphasis added).

Based upon these considerations, the Court holds that the phrase "upon the basis of the record made before the court" in § 2640(a) provides a standard of review, not merely a scope of review, and establishes that the Court decides <u>de novo</u> monetary penalty recovery actions brought under § 1582(1).

### 2. Impact of De Novo Standard on Remand Determination

#### a. *The Mandatory Remand Principle Is Inapplicable*

Defendant cites a plethora of cases establishing beyond doubt that, <u>on judicial appeal of an administrative determination</u>, the Court <u>must</u> remand to the

---

[20](...continued)
Court No. 07-00337, would be the first case to fall under § 2640(a)(3). Because no decision in that case has yet addressed the issue, the standard of review provided by § 2460(a)(3) remains an open question.

administrative agency upon locating a defect in the agency's application of the law.

Regarding this mandatory remand principle, the Court of Appeals has stated:

> In determining whether and how that principle is to be
> applied, however, its purpose must always be kept in mind: it
> is designed to ensure that the reviewing court does not intrude
> impermissibly on the authority of the administrative agency by
> itself taking action that implicates the agency's expertise and
> discretion. Whether the principle is to be applied necessarily
> turns upon the precise issues the reviewing court has decided
> and what questions remain for the agency to decide on
> remand.

Int'l Light Metals, 279 F.3d at 1003. The mandatory remand requirement applies where

the law "entrusts the agency to make" the relevant determination. Ventura, 547 U.S. at

16. In such cases, a "judicial judgment cannot be made to do service for an

administrative judgment" because the court "is not generally empowered to conduct a

de novo inquiry into the matter being reviewed and reach its own conclusions based on

such an inquiry." Id. (internal quotations and citations omitted). For these reasons, "a

court of appeals should remand a case to an agency for decision of matters that statutes

place primarily in agency hands." Id. (emphasis added).

The teaching of Int'l Light Metals (a de novo case) is that the Court of

International Trade may remand where appropriate, but need not do so unless the

Court would otherwise intrude on agency prerogatives. See 279 F.3d at 1003. The Court

need not blindly exercise remand authority in the case at bar, but must instead examine

whether failure to remand would intrude on Customs' authority.

Consideration of the mandatory remand principle shows that it is inapposite to

the situation at bar. Each of the 25 cases cited by Defendant in this regard originated as

an appeal for judicial review by a party aggrieved by an adverse agency action.[21] In

_____

[21] Thomas, 547 U.S. at 183-84 (asylum applicant challenging BIA denial);
Ventura, 547 U.S. at 13-14 (same);
Florida Power & Light, 470 U.S. at 731-33 (citizen APA suit challenging NRC
         decision);
Nat'l Ass'n of Greeting Card Publrs., 462 U.S. at 818-19 (business association
         challenging postal rate increase);
Enter. Ass'n of Steam, 429 U.S. at 513-14 (union challenging NLRB decision);
South Prairie Constr., 425 U.S. 801-02 (union challenging NLRB decision);
Reilly, 571 F.3d at 1376-77 (employee challenging MSPB decision);
Ad Hoc Shrimp Trade Action Comm., 515 F.3d at 1378-79, 1382 (industry
         coalition challenging Commerce antidumping scope determination);
In re Reuning, 276 F. App'x at 985 (applicant appealing adverse PTO decision);
Folio, 402 F.3d at 1352-53 (employee challenging MSPB decision);
Int'l Light Metals, 279 F.3d at 101-02 (manufacturer challenging Customs' denial
         of drawback claim);
Whittington, 80 F.3d at 472-73 (employee challenging MSPB decision);
Waldau v. Merit Sys. Protection Bd., 19 F.3d at 1396-97 (same);
Trent Tube, 975 F.2d at 809 (manufacturers challenging Commerce injury
         determination);
Kline, 808 F.2d at 44 (employee challenging MSPB decision);
Casteneda-Castillo v. Gonzales, 488 F.3d at 19-20 (asylum applicant challenging
         BIA denial);
Soltane, 381 F.3d at 145-46 (employer APA suit challenging INS visa denial);
Coal. for Gov't Procurement, 365 F.3d 442-43 (business coalition APA suit
challenging FPI action);
Baystate Alternative Staffing, 163 F.3d at 670 (employer APA suit challenging
         Dep't of Labor decision);
PPG Indus., 52 F.3d at 364-65 (manufacturer APA suit challenging Dep't of Labor
         decision);
Coteau Props., 53 F.3d at 1471 (company APA suit challenging OSM action);
Tomas, 935 F.2d at 1555 (citizen challenging state agency actions);
Pollgreen, 770 F.2d at 1543 (boat owners challenging BIA fines for involvement in
         Mariel Boatlift);

(continued...)

such cases, the district court "sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether [the agency's] decision was factually flawed." PPG Indus., 52 F.3d at 365 (quoting Marshall Co. Health Care Ass'n v. Shalala, 988 F.2d 1221, 1225 (D.C. Cir. 1993)). This case is not before the Court on appeal; to the contrary, the Court sits here as a trial court and is "authorized to determine in a trial-type proceeding whether [the agency's] decision was factually flawed." Id. This conclusion follows from the standard of review statute, § 2640(a)(6), which authorizes the Court to conduct a trial de novo. See Analysis, § III.B.1, supra; compare also 19 U.S.C. § 1641(d)(2)(A) (providing procedure for imposing monetary penalties but making no provision for direct judicial appeal) with 19 U.S.C. § 1641(d)(2)(B) (providing procedures for suspension or revocation of broker's license) and § 1641(e) (limiting inquiry of court upon judicial appeal of suspension or revocation of broker's license). Unlike the situation in Ventura and the other cases cited by Defendant, this Court, not Customs, bears the authority to determine the central question of the suit: whether Plaintiff is entitled to recovery of a monetary penalty issued under § 1641(d)(2)(A). 28 U.S.C. § 1582(1); 19 C.F.R. § 111.94. For these reasons, the Court finds that the mandatory remand principle is inapplicable.

---

[21](...continued)
Ommaya, 726 F.2d at 829 (employee challenging MSPB decision); and
Kamheangpatiyooth, 597 F.2d at 1255 (applicant for suspension of deportation challenging BIA denial).

> b.       *Discretionary Remand is Inappropriate*

Even though the mandatory remand principle does not apply, the Court still

must consider whether to remand to Customs pursuant to 28 U.S.C. § 2643.  That statute

states that the Court "may order such further administrative or adjudicative procedures

as the court considers necessary to enable it to reach the correct decision," § 2643(b),

and, with exceptions not applicable here, "may . . . order any other form of relief that is

appropriate in a civil action, including . . . orders of remand," § 2643(c)(1).  Remand is

thus within the Court's discretion, and should be exercised when doing so will assist the

Court in reaching the correct result.  28 U.S.C. § 2643(b); Jarvis Clark Co. v. United

States, 733 F.2d 873, 878 (Fed. Cir. 1984).  The Court can reach the correct result here

only by resolving the fundamental issue of the trial:  has Plaintiff proven by a

preponderance of the evidence that the Court should permit recovery of the monetary

penalties imposed upon UPS?  Remand is not an appropriate means of answering that

question.

Unlike the situation in Int'l Light Metals, Plaintiff here is not a private party

seeking relief from adverse agency action, but is rather the government, seeking to

enforce agency action.  See 279 F.3d at 1002.  The Court makes its determination de

novo upon the basis of a record that the government must develop and in which the

government bears the burden of proving entitlement to recovery, like any other plaintiff

bringing a civil suit.  28 U.S.C. § 2640(a)(6); 19 U.S.C. § 1641(d)(2)(A).  The Court of

Appeals, in ruling that this Court erred "in upholding [Customs]'s determination that

UPS did not exercise responsible supervision and control in violation of 19 U.S.C. § 1641," indicated that Plaintiff's burden of proof required showing at trial that it had complied with all of the prerequisites of the § 1641(d)(2)(A) penalty procedure, including proper consideration of the § 111.1 factors. This burden of proof would become meaningless if, after Plaintiff failed to prove entitlement to recovery at trial, the Court exercised its discretionary remand power so that Plaintiff could create the facts prerequisite to recovery, add those facts to the trial record, and receive a judgment in its favor. Certainly no other plaintiff would be allowed such an extraordinary remedy for a failure of proof at trial. Furthermore, the parties have not identified, and the Court has not located, any case brought pursuant to 28 U.S.C. § 1582 which has been remanded to the agency. Therefore, after due consideration, the Court concludes that discretionary remand to Customs pursuant to 28 U.S.C. § 2643 would be inappropriate in this case. Remand being neither mandatory nor appropriate, the Court denies the request to remand this case to Customs.

## CONCLUSION

The Court holds that (1) Plaintiff failed to establish at trial that the required Customs officer, here the FP&F Officer, considered all ten factors of responsible supervision and control set forth in 19 C.F.R. § 111.1 when imposing the monetary penalties at issue on UPS; (2) this failing was tantamount to a failure by Plaintiff to meet its burden of proof; (3) Plaintiff has not shown grounds for reopening the trial to introduce additional evidence; (4) it is neither necessary nor appropriate to remand this

case to Customs; and (5) as a result of Plaintiff's failure to establish that the monetary

penalties at issue were properly imposed in accordance with the broker statute and the

regulations interpreting that statute, the Court will enter judgment for Defendant.

Judgment will issue separately in accordance with this Opinion.

<u>    /s/Gregory W. Carman    </u>
Gregory W. Carman

Dated:      January 28, 2010
            New York, New York